# Exhibit 106



**AMERICANS
UNITED**
*for Separation of
Church and State*

518 C Street, N.E.

Washington, D.C. 20002

(202) 466-3234 phone

(202) 466-2587 fax

americansunited@au.org

www.au.org

May 12, 2009

*By U.S. Mail and E-mail*
John Gallacher, Superintendent          Thomas Duffy, Principal
Enfield Public Schools                  Enfield High School
27 Shaker Road                          1264 Enfield Street
Enfield, CT 06082                       Enfield, CT 06082
E-mail: *Superintendent@enfieldschools.org*  E-mail: *ehsprincipal@enfieldschools.org*

Andre V. Greco (*agreco@enfieldschools.org*)
Charles L. Johnson, III (*cjohnson@enfieldschools.org*)
Judith Apruzzese-Desroches (*jadesroches@enfieldschools.org*)
Tom Arnone (*tomarnone@cox.net*)
Patrick Droney (*pdroney@enfieldschools.org*)
Susan A. Lavelli-Hozempa (*slhozempa@enfieldschools.org*)
Vincent M. Grady (*vinnygrady@cox.net*)
Greg Stokes (*gstokes@enfieldschools.org*)
Board of Education
Enfield Public Schools
27 Shaker Road
Enfield, CT 06082

**Re: Enfield High School Graduation in a Church**

Dear Mr. Gallacher, Mr. Duffy, and Board members:

We have received a complaint that Enfield High School will hold its 2009 graduation ceremonies at First Cathedral Church in Bloomfield. First Cathedral's sanctuary, where the ceremony will be held, features a large stained glass representation of a cross that hangs directly above where graduation speakers will stand and where graduates will receive their diplomas. Large banners featuring religious phrases also hang in the sanctuary, flanking the cross. We write to inform you that holding a public-school graduation ceremony in a house of worship violates the Establishment Clause of the First Amendment to the U.S. Constitution.

"It is beyond dispute that, at a minimum, the constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). This constitutional guarantee applies with enhanced force in the public-school setting, where there are "heightened concerns with protecting freedom of conscience from subtle coercive pressure." *Id.* at 592. These concerns are particularly salient with respect to graduation ceremonies. Although attendance may be technically voluntary, graduations are once-in-a-lifetime events of immense civic and social importance to students and their families: "to say a teenage student has a real choice not to attend her high school graduation is formalistic in the extreme." *Id.* at 595. Accordingly, the Supreme Court has held that conditioning attendance at public-school graduations on exposure to unwanted expressions of religion is prohibited: "The Constitution

*Your voice in the battle to preserve religious liberty*

forbids the State to exact religious conformity from a student as the price of attending her own high school graduation." *Id.* at 596.

Holding a public-school graduation ceremony in a house of worship is inconsistent with this principle. Just as the government cannot exact participation in a religious exercise as the price of graduation attendance, neither can it require students to receive their diplomas in church, because no government entity "can force [or] influence a person to go to or remain away from church against his will." *Everson v. Bd. of Educ.*, 330 U.S. 1, 15 (1947). Even when no formal religious worship service is underway, a church's sanctuary remains an inherently religious setting — the physical embodiment of the faith community it shelters, and a sacred space which serves the express purpose of facilitating and fostering religious worship. Indeed, to treat a church sanctuary as just another public space "would be an affront . . . to all those for whom" presence in the sanctuary necessarily involves "an essential and profound recognition of divine authority." *Cf. Lee*, 505 U.S. at 594. For nonbelievers, compelled presence within such a sacred space — and participation in a ceremony within that space — involves an equally profound but entirely unwanted recognition of, and submission to, the authority of a religious viewpoint contrary to their own.

This coercive effect is magnified when — as at First Cathedral, where a huge cross, flanked by religious banners, towers over the space where the graduates receive their diplomas — the sacred space is replete with sectarian iconography. It is beyond dispute that religious iconography sends a religious message. *See Capitol Square Review and Advisory Bd. v. Pinette*, 515 U.S. 753, 760 (1995) (holding that Christian cross sends an expressive message); *County of Allegheny v. ACLU*, 492 U.S. 573, 598, 600-01 (1989) (finding that crèche sends a religious message); *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 632 (1943) (noting that "the church speaks through the Cross, the Crucifix, the altar and shrine, and clerical r[a]iment"). And it is equally well-settled that the Establishment Clause prohibits public schools from forcing such messages on students — especially during a graduation ceremony. *See Lee* 505 U.S. at 596.

The Establishment Clause prohibits government entities, such a public high-schools, from taking any action that "has the purpose or effect of 'endorsing' religion." *Allegheny*, 492 U.S. at 592. Yet the presence of religious symbols and iconography at a site where a public-school event is held does precisely that: It sends the unconstitutional message that the government favors religion or the particular religious views these symbols embody. *See Spacco v. Bridgewater Sch. Dep't*, 722 F. Supp. 834, 840-43 (D. Mass 1989) (granting a preliminary injunction against the placement of students in a public-school facility leased from a church because the students were exposed to several large crosses and other religious icons and items outside and inside the building).

The Establishment Clause also prohibits excessive entanglement between government and religion. *See, e.g.*, *Agostini v. Felton*, 521 U.S. 203, 232-33 (1997). Excessive entanglement can result from "delegation of state power to a religious body" (*see Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 696-97 (1989) (citing *Larkin v. Grendel's Den*, 459 U.S. 116 (1982))) or

2

from governmental intrusions in the affairs of religious organizations, such as inquiries into religious doctrine (*see Hernandez*, 490 U.S. at 696-97; *Lemon v. Kurtzman*, 403 U.S. 602, 618-22 (1971)). Enfield High School cannot hold graduations at First Cathedral without violating one of those two prohibitions. On the one hand, if the school were to permit the church to decide whether to cover or remove religious items that would otherwise be visible to graduates and their guests, the school would have given a religious institution the authority to control the physical setting for a public-school event. In a similar circumstance, where a school district allowed a church to decide whether to cover a cross on the outside of the church building the school used for classes, the court in *Spacco* found improper entanglement of religion and government. *See* 722 F. Supp. at 845-46. On the other hand, if the school were to assert control over First Cathedral's physical space and attempt to cleanse the church of religious symbols in order to hold graduations there, it would have to decide which objects in the church are religious and which are not — exactly the kinds of judgments government officials must not make. *See Hernandez*, 490 U.S. at 696-97; *Lemon*, 403 U.S. at 621-22. Thus, if Enfield High School were to hold graduation at First Cathedral, excessive entanglement would invariably result.

Consistent with these principles, in *Lemke v. Black*, 376 F. Supp. 87 (E.D. Wis. 1974), a federal district court issued a preliminary injunction against the holding of a public-high-school graduation ceremony in a Catholic church. *Id.* at 89. Observing that "[p]erhaps the most obvious purpose of the religion clause of the First Amendment was to protect the rights of religious minorities to live within the dictates of their consciences," the court concluded that "[i]t is cruel to force any individual to violate his conscience in order to participate" in this once-in-a-lifetime event. *Id.* And more recently, a Florida district court ruled that holding a public-school graduation ceremony in a church would likely be unconstitutional. *Musgrove v. Brevard County Sch. Bd.*, ___ F. Supp. 2d ___, 2005 WL 6269441 (M.D. Fla. May 18, 2005).

The choice of a sectarian venue for graduation not only violates the Constitution but also ignores the religious diversity of Enfield High School's students and their families. As the Supreme Court recognized in *Lee*, and as every student and parent knows, graduation is a momentous rite of passage during which every student should be entitled to feel welcome and comfortable. A commencement ceremony is designed to honor students for their achievements. Yet holding the ceremony at First Cathedral compromises this purpose: those whose faiths forbid them from entering other faiths' houses of worship, and those whose consciences dictate that they avoid religious settings, will feel uncomfortable at best, and unwelcome at worst. Enfield High School would do greater honor to its students and their families by respecting their religious diversity.

We therefore ask that you arrange for this year's ceremony to be held at a secular venue. If it is not possible to move this year's ceremony, then we ask — although this would not cure the constitutional violation, but would only lessen its severity — that you cover all religious iconography at the venue, and that you ensure that next year's ceremony will be held at a secular venue. Because the date of the ceremony is rapidly approaching, we ask that you respond to this letter within ten days.

Please do not hesitate to contact Ian Smith at (202) 466-3234 or *ismith@au.org* if you would like to discuss this matter.

Very truly yours,

Ayesha N. Khan, Legal Director
Alex J. Luchenitser, Senior Litigation Counsel
Ian Smith, Staff Attorney*

*Admitted to the Tennessee bar.  Supervised by Ayesha N. Khan, a member of the D.C. bar.

# Exhibit 107





AMERICANS
UNITED
*for Separation of
Church and State*

National Office
518 C St., N.E.
Washington, D.C. 20002
(202) 466-3234
(202) 466-2587 fax
americansunited@au.org
www.au.org



October 22, 2009

*Via e-mail and U.S. mail*

Dr. John Gallacher, Superintendent          Suzanne Olechnicki, Town Clerk
Enfield Public Schools                       Town of Enfield
27 Shaker Road                               820 Enfield Street
Enfield, CT 06082                            Enfield, CT 06082
*Superintendent@enfieldschools.org*          *TownClerk@enfield.org*


Andre V. Greco, Chairman (*agreco@enfieldschools.org*)
Charles L. Johnson III, Vice Chairman (*cjohnson@enfieldschools.org*)
Joyce P. Hall, Secretary (*jhall@enfieldschools.org*)
Judith Apruzzese-Desroches (*jadesroches@enfieldschools.org*)
Tom Arnone (*tomarnone@cox.net*)
Patrick Droney (*pdroney@enfieldschools.org*)
Vincent M. Grady (*vinnygrady@cox.net*)
Susan A. Lavelli-Hozempa (*slhozempa@enfieldschools.org*)
Greg Stokes (*gstokes@enfieldschools.org*)
Enfield Board of Education
Enfield, CT (mailing address list for individual Board members attached)

Re: FOIA request concerning location of Enfield Schools' high-school graduations

Dear Dr. Gallacher, members of the Board of Education, and Ms. Olechnicki:

On behalf of the Connecticut members of Americans United for Separation of Church and State, on behalf of the American Civil Liberties Union Foundation of Connecticut and its members, and on behalf of the ACLU Program on Freedom of Religion and Belief, pursuant to the Connecticut Freedom of Information Act (CONN. GEN. STAT. §§ 1-200 to 1-242), we request copies of all documents described below that are in the possession, custody, or control of the Enfield Public Schools or the Town of Enfield (including all documents in the possession, custody, or control of any board or council member, official, or employee of the Schools or the Town; while we expect that most responsive documents will be in the possession of the Schools, we believe that some will be in the possession of the Town):

1. All documents dated or created after June 30, 2005 relating to or referring to the holding of Enfield High School ("Enfield High") or Enrico Fermi High School ("Enrico Fermi") graduation ceremonies at the First Cathedral or the selection of a site for the Enfield High or Enrico Fermi graduations, including but not limited to:

a. All communications relating to or referring to these matters, including letters, e-mails (both e-mails sent to official e-mail accounts and e-mails sent to personal e-mail accounts), memoranda, and reports sent or received by any Enfield Public Schools or Town of Enfield board or council member, official, employee, representative, or agent, any student or parent, any employee or representative of the First Cathedral, or any other person. (Documents responsive to this request will include the document identified in item 8(c) of the minutes of the January 22, 2008 Enfield Board of Education meeting as "E-mail from a FHS parent regarding the graduation this year" and the document identified in item 8(a) of the minutes of the February 26, 2008 Enfield Board of Education meeting as "Enfield High School Graduation Site Information.")

b. All notes, prepared texts, press clippings, and other written records of or reflecting any oral statements made about these matters by any person, and all PowerPoint presentations, overhead projections or slides, and similar documents relating to these matters.

c. All final and draft contracts and agreements between the Enfield Public Schools and the First Cathedral; all applications, forms, and other documents submitted by the Enfield Public Schools to the First Cathedral in order to use the facility; and all documents relating to or constituting reservations (including tentative ones) to use the First Cathedral.

d. All promotional or informational materials provided by or obtained from the First Cathedral about the facility, and all First Cathedral policies or guidelines relating to the use of the Cathedral by persons or entities renting the facility.

e.  All documents reflecting or relating to payments by the Enfield Public Schools to use the First Cathedral, including bills, invoices, and records of payment, as well as any documents identifying or describing the sources of funds used by the Enfield Public Schools to pay the First Cathedral.

f.  Any documents identifying or describing the total cost per graduation to the Enfield Public Schools (which may exceed the amounts paid directly to the First Cathedral) of holding Enfield High or Enrico Fermi graduations at the First Cathedral; any documents containing projections or estimates of the total cost per graduation of holding Enfield High or Enrico Fermi graduations at any other potential venue; and any documents containing projections or estimates of the cost of purchasing a protective cover for the new high-school athletic fields.

g.  All documents created by or obtained by any school-board, school, student, parent, or other committee or subcommittee (including but not limited to the advisory committee formed in connection with the 2007 Enrico Fermi graduation and the advisory committee formed in connection with the 2008 Enfield High graduation) formed to select or recommend a high-school graduation site or to evaluate possible high-school graduation sites, including minutes or other records of committee discussions or actions, communications to or from any committee member or to or from any representative of any potential graduation site, and all documents in any file created or kept by the committee or subcommittee.

h.  All other documents constituting, containing, relating to, or referring to lists, evaluations, or assessments of possible high-school graduation sites, including documents explaining why sites were rejected, and documents concerning the possibility of purchasing a protective cover for the new high-school athletic fields.

i.  All documents relating to votes or surveys taken by students or parents as to where high-school graduations should be held, including ballots, tallies of votes, notes about comments by parents or students who were surveyed, and instructions or other documents presented to students or parents in conjunction with any vote or survey.

j.  All graduation programs relating to graduations held at the First Cathedral, and all announcements, guidelines, instructions, or other communications or documents provided to students or parents at or in connection with graduations at the First Cathedral, including any documents stating whether and how the number of tickets to the graduations would be limited and how tickets should be obtained, and any documents stating whether and to whom transportation to the First Cathedral would be provided.

k.  All photographs taken of or during graduation ceremonies held at the First Cathedral.  However, if you possess numerous photos of individual students receiving their diplomas, please do not produce all photos of individual students receiving

3

diplomas, but please do produce one such photo from each graduation ceremony as a sample.

l. All other documents that are contained in any file that relates to graduations at the First Cathedral or the selection of a site for the Enfield High or Enrico Fermi graduations, including any exhibit files kept in accordance with Enfield Board of Education Policy 9341.9.

m. All other documents dated or created after June 30, 2005 relating to or referring to the holding of Enfield High or Enrico Fermi graduation ceremonies at the First Cathedral or the selection of a site for the Enfield High or Enrico Fermi graduations.

2. All documents constituting or containing policies, procedures, and guidelines relating to Enfield High or Enrico Fermi graduation ceremonies, including any documents that disclose whether a student must attend his or her graduation ceremony in order to receive a diploma. Please produce the most recent version of each responsive policy, procedure, and guideline, as well as any prior version of each responsive policy, procedure, and guideline if that version was in effect on or after May 1, 2006.

3. Any documents identifying or describing the total cost per graduation to the Enfield Public Schools of holding Enfield High or Enrico Fermi graduations on school grounds in 2006 (in the case of both Enfield High and Enrico Fermi) or 2007 (in the case of Enfield High only).

4. Documents setting forth the seating capacities of the athletic fields, gymnasiums, and auditoriums of Enfield High, Enrico Fermi High, and John F. Kennedy Middle School, and documents setting forth the seating capacities of any other Enfield Public Schools or Town of Enfield facility that can seat more than 1,200 people. (For each facility, you need only produce the most recent document that sets forth its seating capacity.)

5. With respect to the 2006 and 2007 Enfield High graduations and 2006 Enrico Fermi graduation, any documents stating whether and how the number of tickets to the graduations would be limited and how tickets should be obtained.

6. For each Enfield High and Enrico Fermi class that graduated in or after 2006, documents setting forth the total number of students that were enrolled in twelfth grade at the beginning of the school year, the total number of students who graduated, the total number of students who went to the class's graduation ceremony, and the total number of people who attended the graduation ceremony. (For each item of data sought by this request, you need only produce one document that sets forth the data.)

7. Documents setting forth, separately for Enfield High and Enrico Fermi, the number of students currently enrolled in each grade. (For each item of data sought by this request, you need only produce one document that sets forth the data.)

4

8.  All minutes of meetings of the Enfield Board of Education held between July 1, 2005 and July 9, 2007.

9.  All Enfield High and Enrico Fermi newsletters and student newspapers, as well as all district-wide Enfield Public Schools newsletters, dated or created after June 30, 2005.  (Please do not include newsletters of individual schools other than Enfield High or Enrico Fermi; and please do not include daily bulletins unless they are responsive to Request No. 1 above.)

10.  The current Enfield Public Schools budget for the fiscal year ending June 30, 2010.

11.  Video recordings of the 2006 and 2007 Enrico Fermi graduations and the 2007 and 2008 Enfield High graduations.

12.  Audio or video recordings of the Enfield Board of Education meetings held on the following dates:

a.  June 13, 2006.
b.  July 11, 2006.
c.  November 14, 2006.
d.  November 28, 2006.
e.  July 10, 2007.
f.  January 22, 2008.
g.  February 26, 2008.
h.  March 11, 2008.
I.  March 25, 2008.
j.  July 8, 2008.
k.  October 14, 2008.
l.  October 28, 2008.

For each meeting, please produce the audio recording if it would cost less than the video recoding, or the video recording if it would cost less than the audio recording.  We note that Enfield Board of Education Policy 1120 requires audio recordings of Board meetings to be retained for at least twenty-four months after the minutes of the meeting are approved.

13.  Any documents dated or created after June 30, 2005 relating to the use of the First Cathedral for any Enfield Public Schools event other than Enfield High or Enrico Fermi graduations.

In responding to this FOIA request, please do not include any Enfield Board of Education minutes dated July 10, 2007 or later, or any minutes of the Enfield Town Council dated January 3, 2000 or later, as these documents are available on the internet.  Likewise, if any other documents responsive to this FOIA request are available on the Enfield Public Schools or Town of Enfield website, please provide the hyperlink to the webpage where the documents may be

found in lieu of providing the actual documents, if doing so would reduce the charges associated with this request.

This FOIA request seeks both copies of documents that are in paper format (pursuant to CONN. GEN. STAT. § 1-210(a)(3)) and copies of documents that are in electronic format (pursuant to CONN. GEN. STAT. § 1-211(a)).  If, however, the same documents exist in both formats, please produce those documents only in the format that will result in the lowest charges for this request. Moreover, if doing so would reduce the charges associated with this request, please produce responsive documents (regardless of their current format) only in electronic format (on a CD or by e-mailing them in segments no greater than 10MB).

Although the Connecticut Freedom of Information Act requires the documents sought by this FOIA request to be provided within four business days (*see* CONN. GEN. STAT. § 1-206(a)), in light of the extensive nature of this FOIA request we ask that you provide the documents by November 12, 2009, and we will not deem (notwithstanding CONN. GEN. STAT. § 1-206(a)) any failure to provide the documents prior to that date a denial of the request.  If, however, a significant portion of the requested documents can be provided substantially prior to November 12 (for example, if paper or electronic documents can be provided substantially quicker than copies of audio or video recordings), please provide the documents in blocks or segments as they become available.

Pursuant to CONN. GEN. STAT. § 1-206(d)(3), we ask that you waive any fee associated with this FOIA request, because complying with this request will benefit the general welfare.  As explained in prior correspondence from our organizations, we have very serious concerns about the constitutionality of the use of the First Cathedral for graduations, and we believe that compliance with this request will facilitate efforts to persuade the Enfield Public Schools to hold graduations in a venue that does not pose constitutional issues and is respectful of the rights of religious minorities.

If you decline to waive the fees associated with this FOIA request, we agree and commit to pay the fee that will be due for this request under state law, up to $300.  If you estimate that the total fee for this request will exceed $300, please inform us of the estimate and obtain authorization before you incur charges greater than $300.

Please send responsive documents by mail to Alex Luchenitser, Americans United, 518 C St. NE, Washington, DC 20002, or by e-mail to *luchenitser@au.org*.  If you would like to discuss or have questions about this FOIA request, please contact Alex Luchenitser at 202-466-3234 x207 or *luchenitser@au.org* (except between October 26 and November 3, please contact Devin Cain at 202-466-3234 x238 or *cain@au.org*, as Mr. Luchenitser will be out of the office then).

Thank you in advance for your assistance.

Sincerely,

Alex J. Luchenitser
Senior Litigation Counsel
Americans United for
  Separation of Church
  and State
518 C St. NE
Washington, DC 20002
phone: 202-466-3234 x207
fax: 202-466-2587
*luchenitser@au.org*

David J. McGuire
Staff Attorney
ACLU of Connecticut
2074 Park St.
Suite L
Hartford, CT 06106
phone: 860-523-9146 x212
fax: 860-586-8900
*dmcguire@acluct.org*

Daniel Mach
Director of Litigation
ACLU Program on
  Freedom of Religion
  and Belief
915 15th St., NW
Washington, DC  20005
phone: 202-548-6604
fax: 202-546-0738
*dmach@aclu.org*

List of individual addresses of members of the Enfield Board of Education:

Andre V. Greco - Chairman
3 Surrey Lane
Enfield, CT 06082

Charles L. Johnson III - Vice Chairman
19 Orbit Drive
Enfield, CT 06082

Joyce P. Hall - Secretary
4 Pine Grove Avenue
Enfield, CT 06082

Judith Apruzzese-Desroches
28 Celtic Court
Enfield, CT 06082

Tom Arnone
5 Cartier Road
Enfield, CT 06082

Patrick Droney
15 Bobolink Drive
Enfield, CT 06082

Susan A. Lavelli-Hozempa
70 Laurel Street
Enfield, CT 06082

Vincent M. Grady
39 Guild Street
Enfield, CT 06082

Greg Stokes
10 Steele Road
Enfield, CT 06082

cc:

Mr. Thomas Duffy, Principal
Enfield High School
1264 Enfield Street
Enfield, CT 06082
*tduffy@enfieldschools.org*

Paul Newton, Principal
Enrico Fermi High School
124 N. Maple Street
Enfield, CT 06082
*pnewton@enfieldschools.org*

# Exhibit 108





National Office
518 C St., N.E.
Washington, D.C. 20002
(202) 466-3234
(202) 466-2587 fax
americansunited@au.org
www.au.org



October 22, 2009

*Via e-mail (where e-mail address listed) and U.S. mail*

Mark F. Zito, Superintendent                    Matthew Ryan, Principal
East Hartford Public Schools                    East Hartford High School
1110 Main St.                                   869 Forbes Street
East Hartford, CT 06108                         East Hartford, CT 06118
*zito.mf@easthartford.org*                      *mryan@easthartford.org*

Mary Alice Dwyer Hughes, Chair, 37 Greene Terrace, East Hartford, CT 06108
  *maryalice9020@sbcglobal.net*
Ram Aberasturia, Secretary, 36 Eric Way, East Hartford, CT 06108
Robert J. Damaschi, 11 Hartz Lane, East Hartford, CT 06118
Bryan R. Hall, 7 Heritage Lane, East Hartford, CT 06118
Karen S. Howe, 100 Ridgewood Road, East Hartford, CT 06118
Hilde J. Mayranen-O'Brien, 19 College Drive, East Hartford, CT 06108
Anita Morrison, 47 Woodbridge Avenue, East Hartford, CT 06108
Marcus C. Oladell, IV, 11 Shawnee Road, East Hartford, CT 06118
Dorese Roberts, 1454 Silver Lane, East Hartford, CT 06118
East Hartford Board of Education

Re: FOIA request concerning location of East Hartford High School graduations

Dear Superintendent Zito, members of the Board of Education, and Principal Ryan:

On behalf of the Connecticut members of Americans United for Separation of Church and State, on behalf of the American Civil Liberties Union Foundation of Connecticut and its members, and on behalf of the ACLU Program on Freedom of Religion and Belief, pursuant to the Connecticut Freedom of Information Act (CONN. GEN. STAT. §§ 1-200 to 1-242), we request copies of all documents described below that are in the possession, custody, or control of the East Hartford Public Schools (including all documents in the possession, custody, or control of any board member, official, or employee of the East Hartford Public Schools):

1.  All documents dated or created after June 30, 2007 relating to or referring to the holding of East Hartford High School graduation ceremonies at the First Cathedral or the selection of a site for East Hartford High School graduations, including but not limited to:

a.  All communications relating to or referring to these matters, including letters, e-mails (both e-mails sent to official e-mail accounts and e-mails sent to personal e-mail accounts), memoranda, and reports sent or received by any East Hartford Public Schools board member, official, employee, representative, or agent, any student or parent, any employee or representative of the First Cathedral, or any other person.

b.  All school-district and school newsletters and all student newspapers relating to or referring to these matters.

c.  All notes, prepared texts, press clippings, and other written records of or reflecting any oral statements made about these matters by any person, and all PowerPoint presentations, overhead projections or slides, and similar documents relating to these matters.

d.  All final and draft contracts and agreements between the East Hartford Public Schools and the First Cathedral; all applications, forms, and other documents submitted by the East Hartford Public Schools to the First Cathedral in order to use the facility; and all documents relating to or constituting reservations (including tentative ones) to use the First Cathedral.

e.  All promotional or informational materials provided by or obtained from the First Cathedral about the facility, and all First Cathedral policies or guidelines relating to the use of the Cathedral by persons or entities renting the facility.

f.  All documents reflecting or relating to payments by the East Hartford Public Schools to use the First Cathedral, including bills, invoices, and records of payment, as well as any documents identifying or describing the sources of funds used by the East Hartford Public Schools to pay the First Cathedral.

g.  Any documents identifying or describing the total cost per graduation to the East Hartford Public Schools (which may exceed the amounts paid directly to the First Cathedral) of holding East Hartford High School graduations at the First Cathedral, and

2

any documents containing projections or estimates of the total cost per graduation of holding East Hartford High School graduations at any other potential venue.

h.  All documents created by or obtained by any school-board, school, student, parent, or other committee or subcommittee formed to select or recommend a high-school graduation site or to evaluate possible high-school graduation sites, including minutes or other records of committee discussions or actions, communications to or from any committee member or to or from any representative of any potential graduation site, and all documents in any file created or kept by the committee or subcommittee.

i.  All other documents constituting, containing, relating to, or referring to lists, evaluations, or assessments of possible high-school graduation sites, including documents explaining why sites were rejected.

j.  All documents relating to any votes or surveys taken by students or parents as to where high-school graduations should be held, including ballots, tallies of votes, notes about comments by parents or students who were surveyed, and instructions or other documents presented to students or parents in conjunction with any vote or survey.

k.  All graduation programs relating to graduations held at the First Cathedral, and all announcements, guidelines, instructions, or other communications or documents provided to students or parents at or in connection with graduations at the First Cathedral, including any documents stating whether and how the number of tickets to the graduations would be limited and how tickets should be obtained, and any documents stating whether and to whom transportation to the First Cathedral would be provided.

l.  All photographs taken of or during graduation ceremonies held at the First Cathedral.  However, if you possess numerous photos of individual students receiving their diplomas, please do not produce all photos of individual students receiving diplomas, but please do produce one such photo from each graduation ceremony as a sample.

m.  All other documents that are contained in any file that relates to graduations at the First Cathedral or the selection of a site for East Hartford High School graduations.

n.  All other documents dated or created after June 30, 2007 relating to or referring to the holding of East Hartford High School graduation ceremonies at the First Cathedral or the selection of a site for East Hartford High School graduations.

2.  All documents constituting or containing policies, procedures, and guidelines relating to East Hartford High School graduation ceremonies, including any documents that disclose whether a student must attend his or her graduation ceremony in order to receive a diploma. Please produce the most recent version of each responsive policy, procedure, and guideline, as

well as any prior version of each responsive policy, procedure, and guideline if that version was in effect on or after May 1, 2008.

3.  Any documents identifying or describing the total cost per graduation to the East Hartford Public Schools of holding the East Hartford High School graduation ceremony at the University of Hartford in 2008.

4.  Documents setting forth the seating capacities of the athletic fields, gymnasiums, and auditoriums of East Hartford High School, and documents setting forth the seating capacities of any other East Hartford High School facility that can seat more than 2,000 people.  (For each facility, you need only produce the most recent document that sets forth its seating capacity.)

5.  With respect to the 2008 East Hartford High School graduation, any documents stating whether and how the number of tickets to the graduations would be limited and how tickets should be obtained.

6.  For each East Hartford High School class that graduated in or after 2006, documents setting forth the total number of students that were enrolled in twelfth grade at the beginning of the school year, the total number of students who graduated, the total number of students who went to the class's graduation ceremony, and the total number of people who attended the graduation ceremony.  (For each item of data sought by this request, you need only produce one document that sets forth the data.)

7.  Documents setting forth the number of students currently enrolled in each grade at East Hartford High School.  (For each item of data sought by this request, you need only produce one document that sets forth the data.)

8.  The video recording of the 2009 East Hartford High School graduation.

9.  Any documents dated or created after June 30, 2007 relating to the use of the First Cathedral for any East Hartford Public Schools event other than East Hartford High School graduations.

In responding to this FOIA request, please do not include any documents that you provided on July 24, 2009 to the ACLU of Connecticut in response to its FOIA request of July 22, 2009.  Likewise, if any documents responsive to this FOIA request are available on the East Hartford Public Schools website, please provide the hyperlink to the webpage where the documents may be found in lieu of providing the actual documents, if doing so would reduce the charges associated with this request.

This FOIA request seeks both copies of documents that are in paper format (pursuant to CONN. GEN. STAT. § 1-210(a)(3)) and copies of documents that are in electronic format (pursuant to CONN. GEN. STAT. § 1-211(a)).  If, however, the same documents exist in both formats, please produce those documents only in the format that will result in the lowest charges for this request.

4

Moreover, if doing so would reduce the charges associated with this request, please produce responsive documents (regardless of their current format) only in electronic format (on a CD or by e-mailing them in segments no greater than 10MB).

Although the Connecticut Freedom of Information Act requires the documents sought by this FOIA request to be provided within four business days (*see* CONN. GEN. STAT. § 1-206(a)), in light of the extensive nature of this FOIA request we ask that you provide the documents by November 12, 2009, and we will not deem (notwithstanding CONN. GEN. STAT. § 1-206(a)) any failure to provide the documents prior to that date a denial of the request.

Pursuant to CONN. GEN. STAT. § 1-206(d)(3), we ask that you waive any fee associated with this FOIA request, because complying with this request will benefit the general welfare. We have very serious concerns about the constitutionality of the use of the First Cathedral for graduations, and we believe that compliance with this request will facilitate efforts to persuade the East Hartford Public Schools to hold graduations in a venue that does not pose constitutional issues and is respectful of the rights of religious minorities.

If you decline to waive the fees associated with this FOIA request, we agree and commit to pay the fee that will be due for this request under state law, up to $100. If you estimate that the total fee for this request will exceed $100, please inform us of the estimate and obtain authorization before you incur charges greater than $100.

Please send responsive documents by mail to Alex Luchenitser, Americans United, 518 C St. NE, Washington, DC 20002, or by e-mail to *luchenitser@au.org*. If you would like to discuss or have questions about this FOIA request, please contact Alex Luchenitser at 202-466-3234 x207 or *luchenitser@au.org* (except between October 26 and November 3, please contact Devin Cain at 202-466-3234 x238 or *cain@au.org*, as Mr. Luchenitser will be out of the office then).

Thank you in advance for your assistance.

Sincerely,

Alex J. Luchenitser
Senior Litigation Counsel
Americans United for
  Separation of Church
  and State
518 C St. NE
Washington, DC 20002
phone: 202-466-3234 x207
fax: 202-466-2587
*luchenitser@au.org*

David J. McGuire
Staff Attorney
ACLU of Connecticut
2074 Park St.
Suite L
Hartford, CT 06106
phone: 860-523-9146 x212
fax: 860-586-8900
*dmcguire@acluct.org*

Daniel Mach
Director of Litigation
ACLU Program on
  Freedom of Religion
  and Belief
915 15th St., NW
Washington, DC 20005
phone: 202-548-6604
fax: 202-546-0738
*dmach@aclu.org*

5

Exhibit 109



**AMERICANS UNITED**
*for Separation of*
*Church and State*





National Office
518 C St., N.E.
Washington, D.C. 20002
(202) 466-3234
(202) 466-2587 fax
americansunited@au.org
www.au.org

November 4, 2009

*Via e-mail (where e-mail address listed) and U.S. mail*

Bruce E. Douglas, Ph.D., Executive Director
Donald P. Walsh, Deputy Executive Director, Finance and Operations (*dwalsh@crec.org*)
Denise Gallucci, General Director of Magnet Schools (*dgallucci@crec.org*)
CREC: Capitol Region Education Council
111 Charter Oak Avenue
Hartford, CT 06106

Anne McKernan, Principal (*amckernan@mlc.crec.org*)
Metropolitan Learning Center Magnet School
1551 Blue Hills Avenue
Bloomfield, CT 06002

　　　　Re: FOIA request concerning location of Metropolitan Learning Center graduations

Dear Dr. Douglas, Mr. Walsh, Ms. Gallucci, and Ms. McKernan:

　　　　On behalf of the Connecticut members of Americans United for Separation of Church and State, on behalf of the American Civil Liberties Union Foundation of Connecticut and its members, and on behalf of the ACLU Program on Freedom of Religion and Belief, pursuant to the Connecticut Freedom of Information Act (CONN. GEN. STAT. §§ 1-200 to 1-242), we request copies of all documents described below that are in the possession, custody, or control of the Capitol Region Education Council ("CREC") or the Metropolitan Learning Center Magnet School (including all documents in the possession, custody, or control of any council or board member, official, or employee of the Council or the School):

1.  All documents dated or created after June 30, 2004 relating to or referring to the holding of Metropolitan Learning Center graduation ceremonies at the First Cathedral or the selection of a site for Metropolitan Learning Center graduations, including but not limited to:

a.  All communications relating to or referring to these matters, including letters, e-mails (both e-mails sent to official e-mail accounts and e-mails sent to personal e-mail accounts), memoranda, and reports sent or received by any CREC or Metropolitan Learning Center board member, official, employee, representative, or agent, any student or parent, any employee or representative of the First Cathedral, or any other person.

b.  All CREC and Metropolitan Learning Center newsletters and all student newspapers relating to or referring to these matters.

c.  All minutes (including minutes of meetings of the CREC Council or Board of Directors or of any Council or Board committee or subcommittee), notes, prepared texts, press clippings, and other written records of or reflecting any oral statements made about these matters by any person, and all PowerPoint presentations, overhead projections or slides, and similar documents relating to these matters.

d.  All final and draft contracts and agreements between the CREC or the Metropolitan Learning Center and the First Cathedral; all applications, forms, and other documents submitted by the CREC or the Metropolitan Learning Center to the First Cathedral in order to use the facility; and all documents relating to or constituting reservations (including tentative ones) to use the First Cathedral.

e.  All promotional or informational materials provided by or obtained from the First Cathedral about the facility, and all First Cathedral policies or guidelines relating to the use of the Cathedral by persons or entities renting the facility.

f.  All documents reflecting or relating to payments by the CREC or the Metropolitan Learning Center to use the First Cathedral, including bills, invoices, and records of payment, as well as any documents identifying or describing the sources of funds used by the CREC or the Metropolitan Learning Center to pay the First Cathedral.

g.  Any documents identifying or describing the total cost (which may exceed the amounts paid directly to the First Cathedral) per graduation (in the most recent year for which this amount was calculated) to the CREC or the Metropolitan Learning Center of holding Metropolitan Learning Center graduations at the First Cathedral, and any documents containing projections or estimates of the total cost per graduation of holding Metropolitan Learning Center graduations at any other potential venue.

h.  All documents created by or obtained by any council, board, school, student, parent, or other committee or subcommittee formed to select or recommend a

Metropolitan Learning Center graduation site or to evaluate possible Metropolitan Learning Center graduation sites, including minutes or other records of committee discussions or actions, communications to or from any committee member or to or from any representative of any potential graduation site, and all documents in any file created or kept by the committee or subcommittee.

i.  All other documents constituting, containing, relating to, or referring to lists, evaluations, or assessments of possible Metropolitan Learning Center graduation sites, including documents explaining why sites were rejected.

j.  All documents relating to any votes or surveys taken by students or parents as to where Metropolitan Learning Center graduations should be held, including ballots, tallies of votes, notes about comments by parents or students who were surveyed, and instructions or other documents presented to students or parents in conjunction with any vote or survey.

k.  All graduation programs relating to graduations held at the First Cathedral, and all announcements, guidelines, instructions, or other communications or documents provided to students or parents at or in connection with graduations at the First Cathedral, including any documents stating whether and how the number of tickets to the graduations would be limited and how tickets should be obtained, and any documents stating whether and to whom transportation to the First Cathedral would be provided.

l.  All photographs taken of or during the 2009 graduation ceremony held at the First Cathedral.  However, if you possess numerous photos of individual students receiving their diplomas, please do not produce all photos of individual students receiving diplomas, but please do produce one such photo from the 2009 graduation ceremony as a sample.

m.  All other documents that are contained in any file that relates to graduations at the First Cathedral or the selection of a site for Metropolitan Learning Center graduations.

n.  All other documents dated or created after June 30, 2004 relating to or referring to the holding of Metropolitan Learning Center graduation ceremonies at the First Cathedral or the selection of a site for Metropolitan Learning Center graduations.

2.  Documents constituting or containing all policies, procedures, and guidelines that are currently in effect relating to Metropolitan Learning Center graduation ceremonies, including any documents that disclose whether a student must attend his or her graduation ceremony in order to receive a diploma.  For each policy, procedure, and guideline, you need only produce the most recent document setting forth the policy, procedure, or guideline.

3

3.   Any documents identifying or describing the total cost per graduation to the CREC or the Metropolitan Learning Center of holding the Metropolitan Learning Center graduation ceremony at the University of Hartford's Lincoln Theater in 2006 or in the location where the graduation was held in 2005.

4.   Documents setting forth the seating capacities of the athletic fields, gymnasiums, and auditoriums of the Metropolitan Learning Center, and documents setting forth the seating capacities of any other CREC or Metropolitan Learning Center facility that can seat more than 500 people.  (For each facility, you need only produce the most recent document that sets forth its seating capacity.)

5.   With respect to the 2005 and 2006 Metropolitan Learning Center graduations, any documents stating whether and how the number of tickets to the graduations would be limited and how tickets should be obtained.

6.   For each Metropolitan Learning Center class that graduated in or after 2005, documents setting forth the total number of students that were enrolled in twelfth grade at the beginning of the school year, the total number of students who graduated, the total number of students who went to the class's graduation ceremony, and the total number of people who attended the graduation ceremony.  (For each item of data sought by this request, you need only produce one document that sets forth the data.)

7.   Documents setting forth the number of students currently enrolled in each grade at Metropolitan Learning Center.  (For each item of data sought by this request, you need only produce one document that sets forth the data.)

8.   The video recording of the 2009 Metropolitan Learning Center graduation.

9.   Any documents dated or created after June 30, 2004 relating to the use of the First Cathedral for any Metropolitan Learning Center or CREC event (including events of other CREC schools) other than Metropolitan Learning Center graduations.

If any documents responsive to this FOIA request are available on the CREC or the Metropolitan Learning Center website, please provide the hyperlink to the webpage where the documents may be found in lieu of providing the actual documents, if doing so would reduce the charges associated with this request.

This FOIA request seeks both copies of documents that are in paper format (pursuant to CONN. GEN. STAT. § 1-210(a)(3)) and copies of documents that are in electronic format (pursuant to CONN. GEN. STAT. § 1-211(a)).  If, however, the same documents exist in both formats, please produce those documents only in the format that will result in the lowest charges for this request. Moreover, if doing so would reduce the charges associated with this request, please produce responsive documents (regardless of their current format) only in electronic format (on a CD or by e-mailing them in segments no greater than 10MB).

4

Although the Connecticut Freedom of Information Act requires the documents sought by this FOIA request to be provided within four business days (*see* CONN. GEN. STAT. § 1-206(a)), in light of the extensive nature of this FOIA request we ask that you provide the documents by November 25, 2009, and we will not deem (notwithstanding CONN. GEN. STAT. § 1-206(a)) any failure to provide the documents prior to that date a denial of the request.

Pursuant to CONN. GEN. STAT. § 1-206(d)(3), we ask that you waive any fee associated with this FOIA request, because complying with this request will benefit the general welfare. Our organizations have very serious concerns about the constitutionality of the use of the First Cathedral for graduations, and we believe that compliance with this request will facilitate efforts to persuade the CREC and the Metropolitan Learning Center to hold graduations in a venue that does not pose constitutional issues and is respectful of the rights of religious minorities.

If you decline to waive the fees associated with this FOIA request, we agree and commit to pay the fee that will be due for this request under state law, up to $100. If you estimate that the total fee for this request will exceed $100, please inform us of the estimate and obtain authorization before you incur charges greater than $100.

Please send responsive documents by mail to Alex Luchenitser, Americans United, 518 C St. NE, Washington, DC 20002, or by e-mail to *luchenitser@au.org*. If you would like to discuss or have questions about this FOIA request, please contact Alex Luchenitser at 202-466-3234 x207 or *luchenitser@au.org*.

Thank you in advance for your assistance.

Sincerely,

Alex J. Luchenitser
Senior Litigation Counsel
Americans United for
  Separation of Church
  and State
518 C St. NE
Washington, DC 20002
phone: 202-466-3234 x207
fax: 202-466-2587
*luchenitser@au.org*

David J. McGuire
Staff Attorney
ACLU of Connecticut
2074 Park St.
Suite L
Hartford, CT 06106
phone: 860-523-9146 x212
fax: 860-586-8900
*dmcguire@acluct.org*

Daniel Mach
Director of Litigation
ACLU Program on
  Freedom of Religion
  and Belief
915 15th St., NW
Washington, DC 20005
phone: 202-548-6604
fax: 202-546-0738
*dmach@aclu.org*

5

# Exhibit 110







AMERICANS
UNITED
*f o r   S e p a r a t i o n   o f*
*C h u r c h   a n d   S t a t e*

National Office
518 C St., N.E.
Washington, D.C. 20002
(202) 466-3234
(202) 466-2587 fax
americansunited@au.org
www.au.org

November 4, 2009

*Via e-mail (where e-mail address listed) and U.S. mail*

Robert E. Kozaczka, Ed.D.                      Daniel P. Sullivan III
Superintendent of Schools                      Principal
South Windsor Public Schools                   South Windsor High School
1737 Main Street                               161 Nevers Rd.
South Windsor, CT 06074                         South Windsor, CT 06074
*rkozaczka@swindsor.k12.ct.us*                 *dsullivan@swindsor.k12.ct.us*

Janice Snyder, Chairperson of the Board
David S. Joy, Vice Chairperson of the Board
Kathleen S. Daugherty, Secretary of the Board
Sheila Appleton
Diane Behler
Anthony Duarte
Carolyn Egan
Timothy P. Kenefick
Richard Mabey
South Windsor Board of Education
1737 Main Street
South Windsor, CT 06074

Re: FOIA request concerning location of South Windsor High School graduations

Dear Superintendent Kozaczka, members of the Board of Education, and Principal Sullivan:

On behalf of the Connecticut members of Americans United for Separation of Church and State, on behalf of the American Civil Liberties Union Foundation of Connecticut and its members, and on behalf of the ACLU Program on Freedom of Religion and Belief, pursuant to the Connecticut Freedom of Information Act (CONN. GEN. STAT. §§ 1-200 to 1-242), we request copies of all documents described below that are in the possession, custody, or control of the South Windsor Public Schools (including all documents in the possession, custody, or control of any board member, official, or employee of the South Windsor Public Schools):

1.  All documents dated or created after June 30, 2003 relating to or referring to the holding of South Windsor High School graduation ceremonies at the First Cathedral or the selection of a site for South Windsor High School graduations, including but not limited to:

a.  All communications relating to or referring to these matters, including letters, e-mails (both e-mails sent to official e-mail accounts and e-mails sent to personal e-mail accounts), memoranda, and reports sent or received by any South Windsor Public Schools board member, official, employee, representative, or agent, any student or parent, any employee or representative of the First Cathedral, or any other person.

b.  All school-district and school newsletters and all student newspapers relating to or referring to these matters.

c.  All minutes (including minutes of meetings of the South Windsor Board of Education or of any Board committee or subcommittee), notes, prepared texts, press clippings, and other written records of or reflecting any oral statements made about these matters by any person, and all PowerPoint presentations, overhead projections or slides, and similar documents relating to these matters.

d.  All final and draft contracts and agreements between the South Windsor Public Schools and the First Cathedral; all applications, forms, and other documents submitted by the South Windsor Public Schools to the First Cathedral in order to use the facility; and all documents relating to or constituting reservations (including tentative ones) to use the First Cathedral.

e.  All promotional or informational materials provided by or obtained from the First Cathedral about the facility, and all First Cathedral policies or guidelines relating to the use of the Cathedral by persons or entities renting the facility.

f.  All documents reflecting or relating to payments by the South Windsor Public Schools to use the First Cathedral, including bills, invoices, and records of payment, as well as any documents identifying or describing the sources of funds used by the South Windsor Public Schools to pay the First Cathedral.

2

g.  Any documents identifying or describing the total cost (which may exceed the amounts paid directly to the First Cathedral) per graduation (in the most recent year for which this amount was calculated) to the South Windsor Public Schools of holding South Windsor High School graduations at the First Cathedral, and any documents containing projections or estimates of the total cost per graduation of holding South Windsor High School graduations at any other potential venue.

h.  All documents created by or obtained by any school-board, school, student, parent, or other committee or subcommittee (including but not limited to the Graduation Subcommittee formed in connection with the 2005 graduation) formed to select or recommend a high-school graduation site or to evaluate possible high-school graduation sites, including minutes or other records of committee discussions or actions, communications to or from any committee member or to or from any representative of any potential graduation site, and all documents in any file created or kept by the committee or subcommittee.

i.  All other documents constituting, containing, relating to, or referring to lists, evaluations, or assessments of possible high-school graduation sites, including documents explaining why sites were rejected.

j.  All documents relating to any votes or surveys taken by students or parents as to where high-school graduations should be held, including ballots, tallies of votes, notes about comments by parents or students who were surveyed, and instructions or other documents presented to students or parents in conjunction with any vote or survey.

k.  All graduation programs relating to graduations held at the First Cathedral, and all announcements, guidelines, instructions, or other communications or documents provided to students or parents at or in connection with graduations at the First Cathedral, including any documents stating whether and how the number of tickets to the graduations would be limited and how tickets should be obtained, and any documents stating whether and to whom transportation to the First Cathedral would be provided.

l.  All photographs taken of or during the 2009 graduation ceremony held at the First Cathedral.  However, if you possess numerous photos of individual students receiving their diplomas, please do not produce all photos of individual students receiving diplomas, but please do produce one such photo from the 2009 graduation ceremony as a sample.

m.  All other documents that are contained in any file that relates to graduations at the First Cathedral or the selection of a site for South Windsor High School graduations.

n.  All other documents dated or created after June 30, 2003 relating to or referring to the holding of South Windsor High School graduation ceremonies at the First Cathedral or the selection of a site for South Windsor High School graduations.

3

2.   Documents constituting or containing all policies, procedures, and guidelines that are currently in effect relating to South Windsor High School graduation ceremonies, including any documents that disclose whether a student must attend his or her graduation ceremony in order to receive a diploma.  For each policy, procedure, and guideline, you need only produce the most recent document setting forth the policy, procedure, or guideline.

3.   Any documents identifying or describing the total cost per graduation to the South Windsor Public Schools of holding the South Windsor High School graduation ceremony at the Bushnell Center for the Performing Arts in 2005 or the school gymnasium in 2004.

4.   Documents setting forth the seating capacities of the athletic fields, gymnasiums, and auditoriums of South Windsor High School, and documents setting forth the seating capacities of any other South Windsor High School facility that can seat more than 2,000 people.  (For each facility, you need only produce the most recent document that sets forth its seating capacity.)

5.   With respect to the 2004 and 2005 South Windsor High School graduations, any documents stating whether and how the number of tickets to the graduations would be limited and how tickets should be obtained.

6.   For each South Windsor High School class that graduated in or after 2004, documents setting forth the total number of students that were enrolled in twelfth grade at the beginning of the school year, the total number of students who graduated, the total number of students who went to the class's graduation ceremony, and the total number of people who attended the graduation ceremony.  (For each item of data sought by this request, you need only produce one document that sets forth the data.)

7.   Documents setting forth the number of students currently enrolled in each grade at South Windsor High School.  (For each item of data sought by this request, you need only produce one document that sets forth the data.)

8.   The video recording of the 2009 South Windsor High School graduation.

9.   Any documents dated or created after June 30, 2004 relating to the use of the First Cathedral for any South Windsor Public Schools event other than South Windsor High School graduations.

In responding to this FOIA request, please do not include any documents that you provided in December 2006 to the ACLU of Connecticut in response to its FOIA request of December 11, 2006.  Likewise, if any documents responsive to this FOIA request are available on the South Windsor Public Schools website, please provide the hyperlink to the webpage where the documents may be found in lieu of providing the actual documents, if doing so would reduce the charges associated with this request.  Notwithstanding the foregoing, please do provide a copy of the May 2009 South Windsor High School newsletter, as that document is responsive to this request but cannot be copied off your website due to an apparent problem with

the file.  In addition, the links on your website to the minutes of the December 9, 2008 and January 13, 2009 meetings of the Board of Education are broken, so please provide those documents if they are responsive to this request.

This FOIA request seeks both copies of documents that are in paper format (pursuant to CONN. GEN. STAT. § 1-210(a)(3)) and copies of documents that are in electronic format (pursuant to CONN. GEN. STAT. § 1-211(a)).  If, however, the same documents exist in both formats, please produce those documents only in the format that will result in the lowest charges for this request. Moreover, if doing so would reduce the charges associated with this request, please produce responsive documents (regardless of their current format) only in electronic format (on a CD or by e-mailing them in segments no greater than 10MB).

Although the Connecticut Freedom of Information Act requires the documents sought by this FOIA request to be provided within four business days (*see* CONN. GEN. STAT. § 1-206(a)), in light of the extensive nature of this FOIA request we ask that you provide the documents by November 25, 2009, and we will not deem (notwithstanding CONN. GEN. STAT. § 1-206(a)) any failure to provide the documents prior to that date a denial of the request.

Pursuant to CONN. GEN. STAT. § 1-206(d)(3), we ask that you waive any fee associated with this FOIA request, because complying with this request will benefit the general welfare.  As explained in a December 11, 2006 letter from the ACLU of Connecticut, our organizations have very serious concerns about the constitutionality of the use of the First Cathedral for graduations, and we believe that compliance with this request will facilitate efforts to persuade the South Windsor Public Schools to hold graduations in a venue that does not pose constitutional issues and is respectful of the rights of religious minorities.

If you decline to waive the fees associated with this FOIA request, we agree and commit to pay the fee that will be due for this request under state law, up to $100.  If you estimate that the total fee for this request will exceed $100, please inform us of the estimate and obtain authorization before you incur charges greater than $100.

Please send responsive documents by mail to Alex Luchenitser, Americans United, 518 C St. NE, Washington, DC 20002, or by e-mail to *luchenitser@au.org*.  If you would like to discuss or have questions about this FOIA request, please contact Alex Luchenitser at 202-466-3234 x207 or *luchenitser@au.org*.

5

Thank you in advance for your assistance.

Sincerely,

Alex J. Luchenitser
Senior Litigation Counsel
Americans United for
   Separation of Church
   and State
518 C St. NE
Washington, DC 20002
phone: 202-466-3234 x207
fax: 202-466-2587
*luchenitser@au.org*

David J. McGuire
Staff Attorney
ACLU of Connecticut
2074 Park St.
Suite L
Hartford, CT 06106
phone: 860-523-9146 x212
fax: 860-586-8900
*dmcguire@acluct.org*

Daniel Mach
Director of Litigation
ACLU Program on
   Freedom of Religion
   and Belief
915 15th St., NW
Washington, DC  20005
phone: 202-548-6604
fax: 202-546-0738
*dmach@aclu.org*

6

Exhibit 111



**AMERICANS UNITED**
*for Separation of Church and State*

National Office
518 C St., N.E.
Washington, D.C. 20002
(202) 466-3234
(202) 466-2587 fax
americansunited@au.org
www.au.org





November 4, 2009

*Via e-mail (where e-mail address listed) and U.S. mail*

Elizabeth E. Feser, Ed. D                           Russell Sills
Superintendent of Schools                           Principal
Windsor Public Schools                              Windsor High School
601 Matianuck Avenue                                50 Sage Park Road
Windsor, CT 06095                                   Windsor, CT 06095
*efeser@windsorct.org*                              *rsills@windsorct.org*

JMilo W. Peck, Jr., President (*ellen.peck@snet.net*)
Christopher Watts, Vice President (*chris@pmarketingllc.com*)
Doreen E. Richardson, Secretary (*folkstonepark@yahoo.com*)
Howard Jubrey, Minority Leader (*hjubreyapppraisal@snet.net*)
Lucille Browne (*lucille.browne@sbcglobal.net*)
Patricia M. DiGiore (*zooomm1@yahoo.com*)
Christopher McAuliffe (*mack1200@comcast.net*)
Paul J. Panos (*ppanos@comcast.net*)
Cristina Santos (*sra.santos@sbcglobal.net*)
Windsor Board of Education
601 Matianuck Avenue
Windsor, CT 06095

Re: FOIA request concerning location of Windsor High School graduations

Dear Superintendent Feser, members of the Board of Education, and Principal Sills:

On behalf of the Connecticut members of Americans United for Separation of Church and State, on behalf of the American Civil Liberties Union Foundation of Connecticut and its members, and on behalf of the ACLU Program on Freedom of Religion and Belief, pursuant to the Connecticut Freedom of Information Act (CONN. GEN. STAT. §§ 1-200 to 1-242), we request copies of all documents described below that are in the possession, custody, or control of the Windsor Public Schools (including all documents in the possession, custody, or control of any board member, official, or employee of the Windsor Public Schools):

1.  All documents dated or created after June 30, 1999 relating to or referring to the holding of Windsor High School graduation ceremonies at the First Cathedral or the selection of a site for Windsor High School graduations, including but not limited to:

a.  All communications relating to or referring to these matters, including letters, e-mails (both e-mails sent to official e-mail accounts and e-mails sent to personal e-mail accounts), memoranda, and reports sent or received by any Windsor Public Schools board member, official, employee, representative, or agent, any student or parent, any employee or representative of the First Cathedral, or any other person.

b.  All school-district and school newsletters and all student newspapers relating to or referring to these matters.

c.  All minutes (including minutes of meetings of the Windsor Board of Education or of any Board committee or subcommittee), notes, prepared texts, press clippings, and other written records of or reflecting any oral statements made about these matters by any person, and all PowerPoint presentations, overhead projections or slides, and similar documents relating to these matters.

d.  All final and draft contracts and agreements between the Windsor Public Schools and the First Cathedral; all applications, forms, and other documents submitted by the Windsor Public Schools to the First Cathedral in order to use the facility; and all documents relating to or constituting reservations (including tentative ones) to use the First Cathedral.

e.  All promotional or informational materials provided by or obtained from the First Cathedral about the facility, and all First Cathedral policies or guidelines relating to the use of the Cathedral by persons or entities renting the facility.

f.  All documents reflecting or relating to payments by the Windsor Public Schools to use the First Cathedral, including bills, invoices, and records of payment, as well as any documents identifying or describing the sources of funds used by the Windsor Public Schools to pay the First Cathedral.

2

g.  Any documents identifying or describing the total cost (which may exceed the amounts paid directly to the First Cathedral) per graduation (in the most recent year for which this amount was calculated) to the Windsor Public Schools of holding Windsor High School graduations at the First Cathedral, and any documents containing projections or estimates of the total cost per graduation of holding Windsor High School graduations at any other potential venue.

h.  All documents created by or obtained by any school-board, school, student, parent, or other committee or subcommittee formed to select or recommend a high-school graduation site or to evaluate possible high-school graduation sites, including minutes or other records of committee discussions or actions, communications to or from any committee member or to or from any representative of any potential graduation site, and all documents in any file created or kept by the committee or subcommittee.

i.  All other documents constituting, containing, relating to, or referring to lists, evaluations, or assessments of possible high-school graduation sites, including documents explaining why sites were rejected.

j.  All documents relating to any votes or surveys taken by students or parents as to where high-school graduations should be held, including ballots, tallies of votes, notes about comments by parents or students who were surveyed, and instructions or other documents presented to students or parents in conjunction with any vote or survey.

k.  All graduation programs relating to graduations held at the First Cathedral, and all announcements, guidelines, instructions, or other communications or documents provided to students or parents at or in connection with graduations at the First Cathedral, including any documents stating whether and how the number of tickets to the graduations would be limited and how tickets should be obtained, and any documents stating whether and to whom transportation to the First Cathedral would be provided.

l.  All photographs taken of or during the 2009 graduation ceremony held at the First Cathedral.  However, if you possess numerous photos of individual students receiving their diplomas, please do not produce all photos of individual students receiving diplomas, but please do produce one such photo from the 2009 graduation ceremony as a sample.

m.  All other documents that are contained in any file that relates to graduations at the First Cathedral or the selection of a site for Windsor High School graduations.

n.  All other documents dated or created after June 30, 1999 relating to or referring to the holding of Windsor High School graduation ceremonies at the First Cathedral or the selection of a site for Windsor High School graduations.

2.   Documents constituting or containing all policies, procedures, and guidelines that are currently in effect relating to Windsor High School graduation ceremonies, including any documents that disclose whether a student must attend his or her graduation ceremony in order to receive a diploma.  For each policy, procedure, and guideline, you need only produce the most recent document setting forth the policy, procedure, or guideline.

3.   Any documents identifying or describing the total cost per graduation to the Windsor Public Schools of holding the Windsor High School graduation ceremony at the MassMutual Center in 2008 or in the location where the graduation was held in the year 2000.

4.   Documents setting forth the seating capacities of the athletic fields, gymnasiums, and auditoriums of Windsor High School, and documents setting forth the seating capacities of any other Windsor High School facility that can seat more than 1,500 people.  (For each facility, you need only produce the most recent document that sets forth its seating capacity.)

5.   With respect to the 2000 and 2008 Windsor High School graduations, any documents stating whether and how the number of tickets to the graduations would be limited and how tickets should be obtained.

6.   For each Windsor High School class that graduated in or after 2000, documents setting forth the total number of students that were enrolled in twelfth grade at the beginning of the school year, the total number of students who graduated, the total number of students who went to the class's graduation ceremony, and the total number of people who attended the graduation ceremony.  (For each item of data sought by this request, you need only produce one document that sets forth the data.)

7.   Documents setting forth the number of students currently enrolled in each grade at Windsor High School.  (For each item of data sought by this request, you need only produce one document that sets forth the data.)

8.   The video recording of the 2009 Windsor High School graduation.

9.   Any documents dated or created after June 30, 1999 relating to the use of the First Cathedral for any Windsor Public Schools event other than Windsor High School graduations.

In responding to this FOIA request, please do not include any documents that you provided on January 12, 2007 to the ACLU of Connecticut in response to its FOIA request of December 20, 2006.  Likewise, if any documents responsive to this FOIA request are available on the Windsor Public Schools website, please provide the hyperlink to the webpage where the documents may be found in lieu of providing the actual documents, if doing so would reduce the charges associated with this request.

This FOIA request seeks both copies of documents that are in paper format (pursuant to CONN. GEN. STAT. § 1-210(a)(3)) and copies of documents that are in electronic format (pursuant

4

to CONN. GEN. STAT. § 1-211(a)).  If, however, the same documents exist in both formats, please produce those documents only in the format that will result in the lowest charges for this request. Moreover, if doing so would reduce the charges associated with this request, please produce responsive documents (regardless of their current format) only in electronic format (on a CD or by e-mailing them in segments no greater than 10MB).

Although the Connecticut Freedom of Information Act requires the documents sought by this FOIA request to be provided within four business days (*see* CONN. GEN. STAT. § 1-206(a)), in light of the extensive nature of this FOIA request we ask that you provide the documents by November 25, 2009, and we will not deem (notwithstanding CONN. GEN. STAT. § 1-206(a)) any failure to provide the documents prior to that date a denial of the request.

Pursuant to CONN. GEN. STAT. § 1-206(d)(3), we ask that you waive any fee associated with this FOIA request, because complying with this request will benefit the general welfare.  As explained in a December 20, 2006 letter from the ACLU of Connecticut, our organizations have very serious concerns about the constitutionality of the use of the First Cathedral for graduations, and we believe that compliance with this request will facilitate efforts to persuade the Windsor Public Schools to hold graduations in a venue that does not pose constitutional issues and is respectful of the rights of religious minorities.

If you decline to waive the fees associated with this FOIA request, we agree and commit to pay the fee that will be due for this request under state law, up to $100.  If you estimate that the total fee for this request will exceed $100, please inform us of the estimate and obtain authorization before you incur charges greater than $100.

Please send responsive documents by mail to Alex Luchenitser, Americans United, 518 C St. NE, Washington, DC 20002, or by e-mail to *luchenitser@au.org*.  If you would like to discuss or have questions about this FOIA request, please contact Alex Luchenitser at 202-466-3234 x207 or *luchenitser@au.org*.

5

Thank you in advance for your assistance.

Sincerely,

Alex J. Luchenitser
Senior Litigation Counsel
Americans United for
  Separation of Church
  and State
518 C St. NE
Washington, DC 20002
phone: 202-466-3234 x207
fax: 202-466-2587
*luchenitser@au.org*

David J. McGuire
Staff Attorney
ACLU of Connecticut
2074 Park St.
Suite L
Hartford, CT 06106
phone: 860-523-9146 x212
fax: 860-586-8900
*dmcguire@acluct.org*

Daniel Mach
Director of Litigation
ACLU Program on
  Freedom of Religion
  and Belief
915 15th St., NW
Washington, DC 20005
phone: 202-548-6604
fax: 202-546-0738
*dmach@aclu.org*

Exhibit 112





National Office
518 C St., N.E.
Washington, D.C. 20002
(202) 466-3234
(202) 466-2587 fax
americansunited@au.org
www.au.org



November 18, 2009

*Via e-mail and U.S. mail*

Gary R. Brochu, Esq.
Shipman & Goodwin LLP
One Constitution Plaza
Hartford, CT 06103-1919
*gbrochu@goodwin.com*

Re: Use of First Cathedral for Enfield Schools' High-School Graduations

Dear Mr. Brochu:

Since 2007 in the case of Enrico Fermi High School, and 2008 in the case of Enfield High School, the Enfield Public Schools have held their high-school graduations in a house of worship, the First Cathedral. As you may have surmised from the nature of our recent FOIA request, we have been retained to file litigation on behalf of Enfield Schools students and parents to stop the Schools' use of the Cathedral, for such use violates the U.S. Constitution and the rights of religious minorities. But we hope that the information conveyed below will obviate the need for a lawsuit by convincing the Schools to voluntarily abandon the practice. We understand that four of the nine members of the Enfield Board of Education are newly elected and are taking office this month. We also understand that when the Board first approved using the Cathedral for graduations, it was told that the religious items in the Cathedral would be covered for graduations. In fact, this never occurred; indeed, as we explain below, religious symbolism is inherent in virtually every aspect of the Cathedral, and so secularizing the facility for school events would not appear to be possible.

As Enfield High School and Enrico Fermi High School students and family members approach the First Cathedral to attend their high-school graduation ceremonies, they view no less than five large Christian crosses that compose the front facade of the building, as well as another cross that towers over the Cathedral's roof.  To enter the Cathedral, they pass under the immense cross in the middle of the facade.  They then see in the Cathedral's lobby a fountain in the shape of a cross surrounded by a frame in the shape of a tomb — which together represent the life after death of Jesus Christ.  Above them, from the ceiling of the lobby, hangs a large glass sculpture, representing the Holy Ghost descending from the heavens.  Numerous religious paintings, including depictions of Jesus, also hang in the lobby.  And before entering the Cathedral's sanctuary, where the graduation ceremonies take place, students and parents pass underneath large banners reading: "The Promise is Still Good! For no matter how many promises God has made, they are 'yes' in Christ. –2 Cor. 1:20a"; and "Enter into His gates with thanksgiving, and into His courts with praise.  Be thankful to Him, and bless his Name.  Psalms 100:4."

After they go into the sanctuary, graduating students walk over images on a carpet that symbolize seven different aspects of Jesus described in parables from the Bible: a fire, a fish, a lion, a shepherd's crook, a lamb, a lily, and the chalice.  The students then take their places for the duration of the ceremony underneath and to the left and right of a giant cross in a window at the front of the sanctuary.  To the left of the cross, also above many students, hangs a long banner reading in large print, "Jesus Christ is Lord," and in slightly smaller print:

> Savior
> Redeemer
> Deliverer
> Truth
> Good Shepherd
> Great High Priest
> Head of the Church
> Bread of Life
> Lamb of God
> King of Kings
> Lord of Lords
> Prince of Peace

Similarly, to the right of the cross, hanging from above, is another long banner that reads in large print, "I am GOD," and in slightly smaller print:

> Jehovah Shammath
>       "The Lord is Here"
> Jehovah Nissi
>       "Our Banner"
> Jehovah Rapha
>       "Our Healer"
> Jehovah Tsidkenu

"Our Righteousness"
Jehovah Yireh
    "Our Provider"
Jehovah Shalom
    "Our Peace"
Jehovah Tsabbaoth
    "The Lord of Hosts"

What is more, as they wait for the ceremony to start, on two jumbo television screens next to each of the banners, as well as on numerous other large screens throughout the sanctuary, a message flashes to students and their guests:

WELCOME TO THE
*The First Cathedral*
A CHURCH FOR ALL PEOPLE

THIS IS GOD'S HOUSE WHERE **JESUS CHRIST** IS LORD

    Aside from the obvious religious messages and symbols, virtually every aspect of the First Cathedral's architecture has religious significance.  The Cathedral itself is built in the shape of a dove, representing the baptism of Jesus.  The lower level of the Cathedral represents the earth, while the middle level represents heaven.  Thus, students and parents who sit in the lower level of the Cathedral's sanctuary sit on "earth," while those in the balcony level sit in "heaven."  The highest level of the building — the Cathedral's cupola — represents the throne room of heaven, where God is.

    The Enfield Public Schools have been holding their high-school graduations in this religious environment even though there are numerous secular facilities in the area that can host the graduations, some of which compare favorably to the Cathedral in terms of price, seating capacity, and location.  We understand that the Cathedral costs approximately $7,400 to $8,000 to rent, holds 3,000 people, and is 13.1 miles from Enfield High and 17.6 miles from Enrico Fermi.  The alternatives include:

    (1) the high-schools' sports fields;
    (2) the Enfield Town Green (1.4 miles from Enfield High; 3.7 miles from Enrico Fermi);
    (3) Asnuntuck Community College in Enfield (2.7 miles from Enfield High; 2.4 miles from Enrico Fermi);
    (4) Big E Coliseum in West Springfield, Massachusetts ($1,500 plus other fees; 5,000 seats; 11.2 miles from Enfield High; 12.3 miles from Enrico Fermi);
    (5) Bushnell Center for the Performing Arts in Hartford ($16,000 to $19,000; 2,800 seats; 17.8 miles from Enfield High; 22.3 miles from Enrico Fermi);
    (6) Chase Arena at the University of Hartford ($18,000 to $19,000; 4,000 seats; 18.3 miles from Enfield High; 22.8 miles from Enrico Fermi);
    (7) Comcast Theatre in Hartford ($18,000; 7,500 seats; 15.7 miles from Enfield High; 20.1 miles from Enrico Fermi);

3

(8) Connecticut Convention Center in Hartford ($19,000; 9,500 seats; 17.2 miles from
     Enfield High; 21.6 miles from Enrico Fermi);
(9) MassMutual Center Arena in Springfield, Massachusetts ($10,500 to $13,000; 7,700
     seats; 9.6 miles from Enfield; 10.7 miles from Enrico Fermi);
(10) Summerwind Performing Arts Center in Windsor (1,500 seats under tent and 2,500
      more on lawn; 12.9 miles from Enfield High; 17.4 miles from Enrico Fermi);
(11) Symphony Hall in Springfield ($5,500; 2,600 seats; 9.7 miles from Enfield High;
      10.8 miles from Enrico Fermi);
(12) Welte Auditorium at Central Connecticut State University in New Britain ($3,000;
      1,800 seats; 26.5 miles from Enfield High; 31 miles from Enrico Fermi); and
(13) XL Center in Hartford (16,600 seats; 16.8 miles from Enfield High; 21.1 miles from
      Enrico Fermi).

(While information about rental fees is based on documents provided by area school districts and
newspaper reports from the last several years, we cannot vouch that all of the fee data is current.)

In addition, Enfield High has been using the Cathedral in the face of overwhelming
opposition by the high-school's students. Approximately seventy-five percent of the school's
2008 graduating class and approximately ninety percent of the Class of 2009 voted against
graduating at the Cathedral. And although a majority of Enrico Fermi High School students
have voted in favor of using the Cathedral, a significant percentage of the students there also
have opposed the venue.

As our organizations explained in the attached prior correspondence, and as two federal
district courts have concluded, holding graduations in a religious environment such as the First
Cathedral violates the Establishment Clause of the First Amendment of the U.S. Constitution.
*See Musgrove v. Brevard County Sch. Bd.*, 608 F. Supp. 2d 1303, 1305 (M.D. Fla. 2005); *Lemke
v. Black*, 376 F. Supp. 87, 89 (E.D. Wis. 1974); *see also Spacco v. Bridgewater Sch. Dep't*, 722
F. Supp. 834, 840-43 (D. Mass 1989). Graduating students, their parents, their older and
younger siblings, and their other family members and guests are coercively subjected to religious
messages as the price of attending high-school commencement — a seminal event in a student's
life. *See, e.g.*, *Lee v. Weisman*, 505 U.S. 577, 595-96 (1992). Students and family members of
minority religions, as well as those who do not subscribe to any religion at all, are immersed in a
religious environment of a faith not their own. Indeed, Christians themselves have a wide
variety of beliefs, and so some Christians may also feel discomfort with the particular religious
symbolism at the Cathedral or the conjunction of that symbolism with a secular event (for
example, that students walk on top of symbols of aspects of Jesus Christ on the Cathedral
sanctuary's carpet in order to get to their seats may cause offense to some).

The selection of the Cathedral as a graduation venue further communicates to members
of the Enfield Schools community that the concerns of religious minorities are not important to
the school district, and that the district favors adherents of the majority religion. *See, e.g.*, *Santa
Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308-10 (2000). Moreover, graduations at the
Cathedral improperly entangle the Enfield Schools with religion, as the Schools grant a religious

4

institution control over the physical setting of a school event. *See, e.g.*, *Larkin v. Grendel's Den*, 459 U.S. 116, 126-27 (1982).

All these points are explained in detail in the attached letters, so we will say no more about the law, except to respond to two points raised in prior correspondence from you. First, that the Enfield Schools may have secular reasons for using the Cathedral (such as the price or the physical amenities of the facility) does not render such use constitutional. The Establishment Clause not only prohibits conduct that has a religious purpose, but also conduct that has a religious effect, such as religious coercion, endorsement, or delegation. *See, e.g.*, *Santa Fe*, 530 U.S. at 302, 308, 314; *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). In fact, not even a compelling governmental interest can justify a violation of the Establishment Clause. *See Comm. for Pub. Educ. & Religious Liberty v. Nyquist*, 413 U.S. 756, 773-74, 783 n.39, 788-89 (1973); *Church of Scientology Flag Serv. Org. v. City of Clearwater*, 2 F.3d 1514, 1539-40 (11th Cir. 1993).

Second, the placement of a disclaimer on school graduation programs cannot cure the constitutional violations. A disclaimer does nothing to prevent or remedy coercive imposition of religion upon students and family members at a graduation ceremony, as we have here. *See Lassonde v. Pleasanton Unified Sch. Dist.*, 320 F.3d 979, 984-85 (9th Cir. 2003); *ACLU v. Black Horse Pike Reg'l Bd. of Educ.*, 84 F.3d 1471, 1482 (3d Cir. 1996); *see also Circle Sch. v. Pappert*, 381 F.3d 172, 182 (3d Cir. 2004). Moreover, where, like here, a strong message of endorsement of religion is presented by the government's conduct, a disclaimer cannot neutralize such a message. *See County of Allegheny v. ACLU*, 492 U.S. 573, 600 (1989); *Stone v. Graham*, 449 U.S. 39, 41 (1981); *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 495-96 (2d Cir. 2009); *Green v. Haskell County Bd. of Comm'rs*, 568 F.3d 784, 808-09 (10th Cir. 2009); *Borden v. Sch. Dist.*, 523 F.3d 153, 177 n.20 (3d Cir. 2008); *Freedom From Religion Found. v. City of Marshfield*, 203 F.3d 487, 495 (7th Cir. 2000); *Smith v. County of Albemarle*, 895 F.2d 953, 958 (4th Cir. 1990); *Kaplan v. City of Burlington*, 891 F.2d 1024, 1029 (2d Cir. 1989); *Am. Jewish Cong. v. City of Chicago*, 827 F.2d 120, 128 (7th Cir. 1987).

Given that the Board of Education's two remaining scheduled meetings for this year are to take place on November 24 and December 8, we will refrain from filing suit if the Enfield Public Schools agree by December 9 to cease holding graduations at the First Cathedral. We urge the Board to respect the rights of religious minorities by moving the graduations to a secular venue, where students and family members of all religious and non-religious persuasions can fully enjoy this seminal event in their lives. Please do not hesitate to contact Alex Luchenitser at 202-466-3234 x207 or *luchenitser@au.org* if you would like to discuss this matter. Thank you for your consideration.

Sincerely,

Alex J. Luchenitser
Senior Litigation Counsel
Americans United for
  Separation of Church
  and State
518 C St. NE
Washington, DC 20002
phone: 202-466-3234 x207
fax: 202-466-2587
*luchenitser@au.org*

David J. McGuire
Staff Attorney
ACLU of Connecticut
2074 Park St.
Suite L
Hartford, CT 06106
phone: 860-523-9146 x212
fax: 860-586-8900
*dmcguire@acluct.org*

Daniel Mach
Director of Litigation
ACLU Program on
  Freedom of Religion
  and Belief
915 15th St., NW
Washington, DC  20005
phone: 202-548-6604
fax: 202-546-0738
*dmach@aclu.org*

Enclosures:
  12/11/2006 ACLU letter
  5/12/2009 AU letter

# Exhibit 113

# SHIPMAN & GOODWIN LLP®

### COUNSELORS AT LAW

Gary R. Brochu
Phone: (860) 251-5705
Fax: (860) 251-5315
gbrochu@goodwin.com

December 2, 2009

**VIA U.S. MAIL AND EMAIL**

Attorney Alex J. Luchenitser
Senior Litigation Counsel
Americans United for Separation of Church and State
518 C. St. NE
Washington, DC 20002

      Re:    Use of First Cathedral for Enfield Schools' High School Graduations

Dear Attorney Luchenitser:

      This letter is to confirm in writing our telephone conversation of yesterday concerning the Enfield Board of Education's current plans for their 2010 high school graduations.

      As I informed you, the Enfield Board of Education has yet to make a decision concerning the location of the high school graduation for either of their two high schools. Specifically, the Board has not decided on First Cathedral as a graduation location. They have not made a reservation with First Cathedral, have made no deposit, and do not have a contract with them.

      The Board of Education has one meeting scheduled for December. Since not all Board members are available for this meeting, the Board will not be addressing the issue of the location(s) of the graduations. The Board expects to make a decision on the location of the 2010 graduations in January.

      As for the status of the district's response to your FOI request, the district is diligently working on complying with your request and expects to have documents available shortly. The extremely broad and far-reaching scope of your request has required a considerable amount of time by school district employees.

      I hope this information is helpful. The school district appreciates your consideration of their request to postpone legal action until they have an opportunity to

make a decision concerning the location of the 2010 graduations.  Please contact me should you wish to discuss this matter.

Sincerely,

Gary R. Brochu

cc:    Dr. John Gallacher, Superintendent of Schools

Exhibit 114

# SHIPMAN & GOODWIN LLP®

### COUNSELORS AT LAW

Gary R. Brochu
Phone: (860) 251-5705
Fax: (860) 251-5315
gbrochu@goodwin.com

December 11, 2009

## VIA U.S. MAIL AND EMAIL

Attorney Alex J. Luchenitser
Senior Litigation Counsel
Americans United for Separation of Church and State
518 C. St. NE
Washington, DC 20002

      Re:    Use of First Cathedral for MLC's High School Graduation/
              Freedom of Information Request

Dear Attorney Luchenitser:

      This letter is to inform you that the Capitol Region Education Council ("CREC") has made the decision to hold the 2010 Metropolitan Learning Center graduation at a location other than the First Cathedral Baptist Church of Bloomfield ("First Cathedral").

      Additionally, in response to your Freedom of Information request dated November 4, 2009, CREC has completed the compilation of the available documents that are responsive to your request.  These documents total 250 pages.  In order to receive a copy of these documents, prepayment of the statutory copying fee of $.50 per page is required, for a total of $125.00.  A check should be made payable to the Capitol Region Education Council and mailed to the attention of Denise Galluci at our Charter Oak Avenue address.

      Should you have any questions concerning this correspondence, please do not hesitate to contact me.

                    Sincerely,

                    Gary R. Brochu

cc:   Mr. Don Walsh, Assistant Executive Director, Finance and Operations
       Denise Galluci, General Director, Magnet Schools

Exhibit 115



# SHIPMAN & GOODWIN LLP®
### COUNSELORS AT LAW

Gary R. Brochu
Phone: (860) 251-5705
Fax: (860) 251-5315
gbrochu@goodwin.com

December 17, 2009

**VIA U.S. MAIL AND EMAIL**

Attorney Alex J. Luchenitser
Senior Litigation Counsel
Americans United for Separation of Church and State
518 C. St. NE
Washington, DC 20002

Re:   Use of First Cathedral for South Windsor's High School Graduation/
      Freedom of Information Request

Dear Attorney Luchenitser:

This letter is to inform you that the South Windsor Board of Education has voted to hold the 2010 South Windsor High School graduation at a location other than the First Cathedral Baptist Church of Bloomfield ("First Cathedral").

Additionally, your organization filed a six--page Freedom of Information request, dated November 4, 2009, with the South Windsor Public Schools. As you know, this request is very extensive, requesting twenty-three different types and categories of documents. In light of the South Windsor Board of Education's decision to not hold their high school graduation at First Cathedral, are you and your colleagues willing to withdraw your Freedom of Information request? If you could communicate with me concerning your position on the status of your Freedom of Information request that would be greatly appreciated.

Should you have any questions concerning this correspondence, please do not hesitate to contact me.

Sincerely,

Gary R. Brochu

cc:   Dr. Robert Kozaczka

1354029v1

Exhibit 116

JUDGMENT ON DECISION BY THE COURT

CIV 32 (7-63)

# United States District Court

FOR THE

## EASTERN DISTRICT OF WISCONSIN

COLEEN LEMKE, ALLAN LEMKE,
KAREN POPP, and OTHERS SIMILARLY
SITUATED,

vs.

BARNEY BLACK, LLOYD CALBO, RICHARD DITTLOFF,
DON MAC TAGGERT, LOREN SPAUDE, MAX WOLLAR,
AND THE ASHWAUBENON SCHOOL BOARD

CIVIL ACTION FILE No. 74-C-144

JUDGMENT

on pltfs' motion for summary judgment

This action came on for ~~trial~~ (hearing)/before the Court, Honorable

, United States District Judge, presiding, and the issues having been duly ~~tried~~

(heard) and a decision having been duly rendered, and the court having granted
plaintiffs' motion for summary judgment

~~It is Ordered and Adjudged~~

   JUDGMENT is hereby entered in favor of the plaintiffs and
against the defendants, without costs to either party.



U.S. DIST. COURT EAST. DIST. WISC.
FILED
JAN 16 1975
at _____ o'clock ____ M
RUTH W. LA FAVE, CLERK

Dated at          Milwaukee, Wisconsin          , this  16th          day

of  January          , 1975 .

_____
Clerk of Court

30.

1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

Civil Action File No. 74-C-144

---

COLLEEN LEMKE, ALLAN LEMKE,
KAREN POPP, and OTHERS SIMILARLY
SITUATED,

                     Plaintiffs

vs.

BARNEY BLACK, LLOYD COLBO, RICHARD
DITTLOFF, DON MAC TAGGERT, LOREN SPAUDE,
MAX WOLLAR, AND THE ASHWAUBENON SCHOOL BOARD,

                     Defendants

NOTICE OF APPEAL

U.S. DIST. COURT EAST. DIST. WISC.

**FILED**

FEB 14 1975

at .............................. o'clock ...... M
RUTH W. LA FAVE, CLERK

---

    Notice is hereby given that all the defendants above named do
her hereby appeal to the United States Court of Appeals for the
Seventh Circuit from the whole of the final judgment entered in
this action on the 16th day of January, 1975.

    Dated this 13th day of February, 1975.

                     CONDON & HANAWAY

                     By
                     Donald J. Hanaway
                     Attorney for Defendants
                     312 Cherry Street
                     P.O. Box 908
                     Green Bay, Wisconsin  54305

31.

Unpublished Per Curiam Order

CERTIFIED COPY

# United States Court of Appeals

FOR THE SEVENTH CIRCUIT

Chicago, Illinois 60604

September 15......, 1975.

A True Copy:
Testes

Deputy Clerk of the United
Court of Appeals fo
Seventh Circuit.

Before

U.S. DIST. COURT EAST. DIST. WISC.
FILED

OCT 8 1975

at................o'clock........M
RUTH W. LA FAVE, CLERK

Hon. THOMAS E. FAIRCHILD, Chief Judge

Hon. JOHN PAUL STEVENS, Circuit Judge

Hon. WILLIAM J. CAMPBELL, Senior District Judge *

COLLEEN LEMKE, ALLAN LEMKE, KAREN POPP,
and OTHERS SIMILARLY SITUATED,
Plaintiffs-Appellees,

No. 75-1272        vs.

BARNEY BLACK, LLOYD COLBO, et al.,
Defendants-Appellants.

Appeal from the
United States
District Court
for the Eastern
District of Wisconsin
No. 74 C 144
John W. Reynolds, J

This cause came on to be heard on the transcript of the record from the

United States District Court for the ......Eastern...................... District of

Wisconsin

On consideration whereof, it is ordered and adjudged by this court that

the judgment of the said District Court in this cause appealed from be, and

the same is hereby, VACATED and the cause REMANDED with directions

to dismiss, in accordance with the order of this Court entered

this date. Each party shall bear its own costs.

---

* Senior District Judge William J. Campbell of the Northern
District of Illinois is sitting by designation.

3

# CERTIFIED COPY
# United States Court of Appeals

For the Seventh Circuit

Chicago, Illinois 60604

UNPUBLISHED ORDER
NOT TO BE CITED
PER CIRCUIT RULE 28

Argued Sept. 9, 1975

September 15 1975

U.S. DIST. COURT EAST. DIST. WISC.
# FILED

OCT 8 1975

at..................o'clock..........M
RUTH W. LA FAVE, CLERK

Before

Hon. THOMAS E. FAIRCHILD, Chief Judge

Hon. JOHN PAUL STEVENS, Circuit Judge

Hon. WILLIAM J. CAMPBELL, Senior District Judge*

COLLEEN LEMKE, ALLAN LEMKE, KAREN POPP
and OTHERS SIMILARLY SITUATED,
                    Plaintiffs-Appellees,

No. 75-1272            vs.

BARNEY BLACK, LLOYD COLBO, RICHARD
DITTLOFF, DONALD MAC TAGGERT, LOREN
SPAUDE, MAX WOLLER, and ASHWAUBENON
SCHOOL BOARD,
                    Defendants-Appellants.

Appeal from the United
States District Court
for the Eastern District
of Wisconsin

No. 74-C-144
John W. Reynolds, Judge.

## ORDER

    This appeal has been submitted without oral argument per
stipulation.

    This action was originally brought to enjoin the holding
of the 1974 graduation ceremonies of the Ashwaubenon High School
in a Roman Catholic Church. A preliminary injunction was granted
and the ceremonies were held elsewhere. Later, after the named
plaintiff, Colleen Lemke,[1]/ had graduated, summary judgment was
granted in favor of the plaintiffs. No class was ever certified.

---

*    Senior District Judge William J. Campbell of the Northern
District of Illinois is sitting by designation.

1    Karen Popp was dismissed as a plaintiff; Allen Lemke is
Colleen Lemke's father and desired to attend her graduation.

FPI MI —9-10-09-10M-3045

4

NO. 75-1272                              -2-

Since there remained no live controversy between the parties, the case should have been dismissed as moot.  Board of School Commissioners of Indianapolis v. Jacobs, 420 U.S. 128.

The judgment of the district court is therefore vacated and the cause remanded with directions to dismiss.  Each party shall bear its own costs.

Copy ... to returning ...
... Central District
... United States
... 10/21/75

U. S. Dist. Court East Dist. Wis.

F I L E D

OCT 2 ... 1975

at_____o'clock_____M
RUTH W. LA FAVE, Clerk

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

-----------------------------------------------------------------

COLLEEN LEMKE, ALLAN LEMKE,
KAREN POPP, AND OTHERS
SIMILARLY SITUATED,

                Plaintiffs,

        v.

BARNEY BLACK, LLOYD CALBO,
RICHARD DITTLOFF, DON MAC
TAGGERT, LOREN SPAUDE,
MAX WOLLAR AND THE ASH-
WAUBENON SCHOOL BOARD,

                Defendants.

Civil Action
No. 74-C-144

O R D E R

-----------------------------------------------------------------

      In accordance with the order of the United States

Court of Appeals for the Seventh Circuit entered on

September 15, 1975,

      IT IS HEREBY ORDERED that this case is dismissed

as moot.

      Dated at Milwaukee, Wisconsin, this **22** day of

October, 1975.

_____
         U. S. District Judge

Exhibit 117

```
                                        U. S. DISTRICT COURT
                                          DISTRICT OF IDAHO
                                        Filed at_____M

                                            MAY 22 1980

                                        JERRY L. CLAPP, Clerk
                                        By_____Deputy
```

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

DAN and SHIRLEY REIMANN,      )
et al.,                       )        Civil No. 80-4059
                              )
          Plaintiffs,         )        ORDER
                              )
          vs.                 )
                              )
FREMONT COUNTY JOINT SCHOOL   )
DISTRICT NO. 215, et al.,     )
                              )
          Defendants.         )
_____)

   This matter came on for hearing on May 21, 1980, on plaintiffs' motion for a preliminary injunction.  Both parties presented testimony and filed briefs.  The court has considered the evidence presented and the arguments of counsel.  Plaintiffs have proven to the satisfaction of the court that (1) unless preliminary injunctive relief is granted they will suffer irreparable harm, and (2) they are likely to prevail on the merits of this case.  Therefore, good cause having been shown,

   IT IS HEREBY ORDERED AND DECREED that a preliminary injunction should be and is hereby issued, enjoining defendants and all persons acting in concert with them, from conducting the North Fremont High School graduation ceremony, now scheduled for May 22, 1980, in the Church of Jesus Christ of Latter Day Saints' Stake Center, Ashton, Idaho.

   DATED this 22nd day of May, 1980.

       RAY McNICHOLS
       _____
       RAY McNICHOLS, Chief Judge

ORDER

MINNE, JOHNSLEY & FAWCETT
603 W. Franklin Street
Boise, Idaho 83701
Phone (208) 345-2654
P O Box 124

EXHIBIT C

1          IN THE UNITED STATES DISTRICT COURT

2              FOR THE DISTRICT OF IDAHO

3

4   DAN and SHIRLEY REIMANN,       )
    et al.,                        )
5                                  )        CIVIL NO. 80-4059
                 Plaintiffs,       )
6                                  )
    vs.                            )
7                                  )      REPORTER'S TRANSCRIPT
    FREMONT COUNTY JOINT SCHOOL    )
8   DISTRICT NO. 215, et al.,      )
                                   )
9                Defendants.       )
                                   )

10

11

12          Reporter's transcript of partial proceedings

13   held May 21, 1980, in Boise, Idaho, before the HONORABLE

14   RAY McNICHOLS, United States District Judge, District of

15   Idaho.

16

17

18

19

20

21

22

23

24   DWIGHT K. WELLS

25   Official Reporter

1   constitution will not be violated and these students whose

2   constitutional rights and interest in their graduation

3   ceremony are paramount will not be subjected to

4   discrimination.

5           We are coming here late, but we are coming

6   here on time.  The defendants can make the effort and they

7   must.

                    (Argument of Mr. Pevar for plaintiffs)

8           Thank you.

9                           (Mr. Crapo then made is

10                          argument.)

11

12                          (The Court then stated the

13                          following.)

14          THE COURT:  I'd like to have time to draft a very

15  carefully worded opinion in this case, but one I would

16  like to state how I feel about the matter and what my views

17  are in front of the people who are most interested so they

18  hear it firsthand.  Therefore, I must do that without the

19  benefit of having an opportunity to very carefully lay

20  out the language.

21          The only issue before me today is whether

22  or not a preliminary injunction should issue, not who

23  ultimately wins the lawsuit or loses it, but whether or

24  not it is necessary to use the power of the Court to

25  temporarily protect certain rights in order to avoid some

1   irreparable harm that can be otherwise straightened out
2   while the case is pending.

3        Everyone knows I think now, and certainly
4   counsel are very much in agreement that there are, first,
5   two things that the Court must look at.  I must determine
6   now from the evidentiary hearing we have had here whether
7   plaintiffs have shown a potential irreparable damage to
8   them and if so, have the plaintiffs demonstrated
9   the likelihood they will continue to prevail in this case.

10        As counsel for the defendants indicated in the
11   second aspect of that, there's a second ground to it.
12   One has to measure then whether that irreparable damage
13   and the allegation of irreparable damage that may be incurred
14   by the people, i.e. in this case the difference between
15   the students and their parents who are the plaintiffs and
16   the balance of the people in the community, some of whom will,
17   it seems to me, be barred from attending the ceremony of
18   necessity because of the mechanics of it.

19        Now, I start with that.  I was very interested
20   in the evidence and I think each person that came here gave
21   their very best and truest version of what they believe
22   to be the facts.  I don't believe anyone here gave us any-
23   thing but what came right from their conscience and the
24   best understanding of the facts of the situation.

25        From those facts it certainly emerges very

1 clearly two things about the facilities that were origin-
2 ally planned.  The taxpayers of Fremont County and the
3 school district there have provided a school.  They put in
4 an auditorium and the purpose of that auditorium clearly
5 was to hold school functions there.

6       Now, with the passage of time it's quite
7 evident that at least for commencement purposes the
8 facility may be too small to take care of everyone that
9 may want to be there, but it is large enough to handle
10 students of the graduating class and the faculty who are
11 the most important, and certainly the families so that
12 those family members can mechanically be there.

13       The alternative that is suggested is to go to
14 a brand new and obviously nice facility that has been pro-
15 vided by one of the churches and which they are willing--
16 the LDS Church--and if I say "Mormon" sometimes I mean
17 nothing but the best.  This institution in our state has
18 demonstrated for many years the goodness within it and the
19 strength that it has.

20       It's clear that they cannot seat all people
21 within it that would like to attend the ceremony at the
22 school.  I don't think the board itself is motivated in
23 making this decision by an improper purpose; however,
24 I have the strongest feeling that in a community such
25 as the evidence shows here, that is strongly Mormon and

1   strongly members of the LDS faith and that that church

2   being a strong missionary church, that where their church

3   is required by public officials to be used for public

4   affairs and while it may be one could say a student doesn't

5   have to go, the facts of life are that they have a right

6   to go and it's a place they want to go to, and if the church

7   can offer that and if the board can utilize that church

8   matter, I am unable to say that that doesn't have the effect

9   of advancing the interests of that church.  That's specific-

10  ally clearest where people are required to attend public

11  affairs, and I use the word "required to attend" again in

12  the sense that it's someplace they want to go and they have

13  a right to, and it's public and a non-sectarian affair.

14  I believe it has to be treated as a potential advancement

15  of a particular religion, an advancement against people

16  in an area where the minority groups, the minority church

17  groups do not want to for reasons of their own, which

18  they have a right to, do not want to attend.

19          I think that the answer to that brings into

20  it that it is not possible to avoid entangling the matter

21  with a religious entanglement.  Obviously, the very fact

22  that we are here indicates the divisiveness in this small

23  community where the majority of the church is to be utilized

24  for this public purpose and has to be attended then by those

25  people whose teachings do not permit them to accept the

*l grad prayers viol r Id Const.*

1  teachings of that church or who actually opposes them,

2  and who don't want to be put in an atmosphere or into the

3  environment of another church.  I just think that the

4  divisiveness here is self-evident.

5          I must say to you I'm reluctant, especially

6  at this late date, to discommode people, but when it comes

7  to discommoding those who have the absolute right to take

8  part in this ceremony, the graduating youngsters, when I

9  measure their right against the overall public rights to

10  take part in something like that, it seems to me that it is

11  an overriding, totally overriding right of the students,

12  and that the ruling of the board violates the First Amendment

13  and the establishment clause, and that I have to admit that

14  I am reluctant about it to restrain the board and the defen-

15  dants from holding the North Fremont High School commence-

16  ment on Friday night in the Latter Day Saints Center.

17          I issue that oral order to those gentlemen and

18  ladies because they are here now.  It is the order of the

19  Court that to hold and proceed with that ceremony would be

20  a violation of these people's constitutional rights and

21  I have ordered them not to do it.  I'll reduce it to

22  writing as soon as I can, but orally you are so advised.

23          I want you to know that I have no pleasure in

24  taking part in your North Snake River controversy, and

25  this kind of case always is difficult to decide, and it's

1   too bad that these matters get to the point where they

2   have to be brought before the Court, and then someone has

3   to say yes or no to a question that hopefully could be

4   better settled by good citizens among themselves.  When it

5   can't be, I have certain duties to carry out and I do the

6   best of my conscience, and that's what I have done here

7   today.

8           You can get a temporary injunction ready and I

9   will sign it, but in the meantime you have the oral

10  injunction.

11          I appreciate the candor of all witnesses here

12  today and I appreciate counsel's efforts to get briefs to

13  the Court in a very short time, and especially defendants.

14          I appreciate also the courtesies and demeanor

15  and manner in which everyone presented this case, and

16  I thank you all.

17                      (Whereupon, the Court

18                       adjourned.)

19

20

21

22

23

24

25

Exhibit 118

Exhibit 118, a DVD containing a video recording of Enrico Fermi High School's 2008 graduation ceremony, was manually filed with the Court.

# Exhibit 119

Exhibit 119, a DVD containing a video recording (partial) of Enfield High School's 2008 graduation ceremony, was manually filed with the Court.

Exhibit 120

Exhibit 120, a DVD containing a video recording of Enfield High School's 2009 graduation ceremony, was manually filed with the Court.

Exhibit 121

Exhibit 121, a DVD containing a video recording of Enrico Fermi High School's 2009 graduation ceremony, was manually filed with the Court.

Exhibit 122

Exhibit 122, a DVD containing a video recording of the Enfield Board of Education's January 12, 2010, meeting, was manually filed with the Court.

# Exhibit 123

Exhibit 123, a DVD containing a video recording of the Enfield Board of Education's April 13, 2010, meeting, was manually filed with the Court.