**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

—————————————————————
)
DOES 1, 2, 3, 4, and 5,                                        )
)
       *Plaintiffs*,                                       )
)
       v.                                                        )    Case No. 3:10-cv-00685-JCH
)
ENFIELD PUBLIC SCHOOLS,                        )    Date:  May 10, 2010
)
       *Defendant*.                                     )
—————————————————————)


**[CORRECTED] MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR LEAVE TO PROCEED USING PSEUDONYMS**

On May 5, 2010, Plaintiffs filed the Complaint in this case, as well as a Motion for Leave to Proceed Using Pseudonyms and accompanying memorandum in support. The paper copies of that memorandum in support—including the file copy delivered to the Clerk, the courtesy copy delivered to the Court, and the copy mailed to Defendant's counsel—were all complete. However, the electronic version contained on the disk Plaintiffs submitted to the Clerk was missing three pages (10-12). That incomplete version has also been uploaded onto the electronic docket as Attachment # 1 to Entry 6. Plaintiffs are now filing the complete version, as file-stamped by the Clerk, to correct the error. The complete version follows:

Respectfully submitted,

/s/ Alex J. Luchenitser

Ayesha N. Khan
(phv03992)
  Legal Director
Alex J. Luchenitser
(phv03992)
  Senior Litigation Counsel
Devin Cain (phv03991)
  Steven Gey Fellow
Americans United for
  Separation of Church
  and State
518 C St. NE
Washington, DC 20002
phone: 202-466-3234
fax: 202-466-2587
*khan@au.org*
*luchenitser@au.org*
*cain@au.org*

May 10, 2010

/s/ David J. McGuire
/s/ Sandra J. Staub

Sandra J. Staub(phv03995)
  Legal Director
David J. McGuire
  Staff Attorney (ct27523)
ACLU of Connecticut
2074 Park St.
Suite L
Hartford, CT 06106
phone: 860-523-9146
fax: 860-586-8900
*sstaub@acluct.org*
*dmcguire@acluct.org*

/s/ Daniel Mach

Daniel Mach(phv03994)
  Director
ACLU Program on
  Freedom of Religion
  and Belief
915 15th St., NW
Washington, DC  20005
phone: 202-675-2330
fax: 202-546-0738
*dmach@aclu.org*

FILED

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

2010 MAY -5  A :0: 33

U.S. DISTRICT COURT
...................

|  |  |
|---|---|
| DOES 1, 2, 3, 4, and 5, | ) |
| *Plaintiffs,* | ) |
| | ) |
| v. | ) |
| | ) |
| ENFIELD PUBLIC SCHOOLS, | ) |
| | ) |
| *Defendant.* | ) |

Case No.  3 1 0 C V 0 0 6 8 5  JCH

Date:   May 4, 2010

**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR LEAVE TO PROCEED USING PSEUDONYMS**

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DOES 1, 2, 3, 4, and 5, ) | |
| ) | |
| *Plaintiffs*, ) | |
| ) | |
| v. ) | Case No. |
| ) | |
| ENFIELD PUBLIC SCHOOLS, ) | Date:  May 4, 2010 |
| ) | |
| *Defendant*. ) | |

## MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO PROCEED USING PSEUDONYMS

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................1

I.    Disclosing Plaintiffs' Identities Would Place Them at Risk of Retaliatory Ostracism, Harassment, Discrimination, and Even Physical Harm .......................................................3

        A.    Establishment Clause Plaintiffs Routinely Face Harassment and Other Forms of Retaliation, Including Physical Violence ................................................................4

        B.    Plaintiffs Each Fear Particular Forms of Retaliation Should Their Identities Be Disclosed — For Most, Based on Past Experience ................................................9

II.    Plaintiffs' Use of Pseudonyms Is Necessary to Protect Highly Private Information, Which Plaintiffs Themselves Have Sought to Protect, Concerning Particularly Vulnerable Parties ........................................................................................................................12

III.    Plaintiffs' Interests In Maintaining Their Anonymity Far Outweigh Any Potential for Prejudice to Defendant and the Public's Interest in Disclosure .........................................15

CONCLUSION ..................................................................................................................17

## INTRODUCTION

This lawsuit challenges the Enfield Public Schools' ("Enfield Schools") practice of holding their annual graduation ceremonies in the sanctuary of a Christian house of worship — the First Cathedral ("the Cathedral"). The plaintiffs contend that this practice violates the Establishment Clause of the U.S. Constitution's First Amendment, and they seek, among other types of relief, an injunction requiring the Enfield Schools to move their graduation ceremonies to a secular venue. In the present motion, the plaintiffs request an order permitting them to proceed using pseudonyms, without disclosing their identities to anyone other than the Court (if it so wishes).

Suits challenging governmental conduct under the Establishment Clause tend to arouse strong emotions in the affected community, and this case has proven no exception. Establishment Clause plaintiffs and their families often suffer social ostracism, economic injury, governmental retaliation, and even physical violence. The plaintiffs here fear that they, too, will suffer harassment and retaliation — fears to which their own past and recent experiences in the Enfield community have contributed. The plaintiffs' interests in their own and their families' safety, well-being, and privacy far outweigh the public's interest in knowing their identities and any potential prejudice to the Enfield Schools. Accordingly, the Court should grant the plaintiffs leave to proceed using pseudonyms.

## ARGUMENT

Though the requirement that a complaint name all parties "cannot be set aside lightly," the Court of Appeals for the Second Circuit has held that plaintiffs should be allowed to proceed pseudonymously when their privacy interests outweigh the public's interest in open and accessible court proceedings and any prejudice to the defendant caused by non-disclosure.

*Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008).  The Second Circuit

has identified a number of factors relevant to such balancing, though the "list is non-exhaustive

and district courts should take into account other factors relevant to the particular case under

consideration."  *Id.* at 189-90.  These factors include: (1) Whether the litigation involves matters

of a very personal and private nature; (2) whether disclosure of a plaintiff's identity creates a risk

of retaliatory physical or mental harm to him or her; (3) whether disclosure presents a risk of

other harms, including "whether the injury litigated against would be incurred as a result of the

disclosure of the plaintiff's identity;" (4) whether the plaintiff is especially vulnerable to the

potential harms of disclosure, for example, due to age; (5) whether the suit challenges actions by

the government or a private party; (6) whether, and to what extent, the defendant is prejudiced by

the plaintiff's anonymity at various stages of the litigation, and the extent to which this prejudice

can be mitigated by the court; (7) whether the plaintiff's identity has thus far been kept

confidential; (8) whether the public's interest in the litigation is furthered by requiring the

plaintiff to disclose his or her identity; (9) whether, due to the "purely legal nature of the issues

presented," the public's interest in knowing the plaintiff's identity is weak; and (10) whether

there are any alternative mechanisms for protecting the plaintiff's privacy.  *Id.* at 190 (citations

omitted).

In the present case, each of these factors, to the extent it is apposite, weighs heavily in the

plaintiffs' favor.  First, disclosing the plaintiffs' identities would place them at risk of retaliatory

ostracism, harassment, discrimination, and even physical harm.  An alarming history of violence

and threats of violence against Establishment Clause plaintiffs demonstrates the enormity of the

potential consequences for these plaintiffs.  Additionally, all of the plaintiffs fear specific forms

of retaliation should their identities be disclosed — fears that are, for the most part, based on past

2

experience.  Moreover, because of the quintessentially private nature of religious faith, the use of

pseudonyms is necessary to protect extremely personal information about these plaintiffs —

information which the plaintiffs themselves have sought to keep private.  Also, because the

plaintiffs in this case are religious minorities, parents of such minorities, or young students still

in secondary school, their use of pseudonyms is necessary to protect the privacy of particularly

vulnerable parties.  Finally, the nature of this case — one against a government agency — and

the legal issues it involves implicate very weakly the public's interest in the disclosure of the

plaintiffs' identities and present a negligible chance of prejudice to the defendant from non-

disclosure.

**I.    Disclosing Plaintiffs' Identities Would Place Them at Risk of Retaliatory Ostracism, Harassment, Discrimination, and Even Physical Harm.**

The Second Circuit has held that if "identification poses a risk of retaliatory physical or

mental harm to the . . . party [seeking to proceed anonymously]," this weighs in favor of granting

anonymity to the plaintiffs.  *Sealed Plaintiff*, 537 F.3d at 190 (citing *James v. Jacobson*, 6 F.3d

233, 238 (4th Cir. 1993)).  Thus courts in this circuit have allowed plaintiffs to proceed under

fictitious names in instances where identification posed a risk of harassment, ostracism,

discrimination, or even physical violence.  *See Doe v. City of New York*, 15 F.3d 264 (2d Cir.

1994) (permitting pseudonymous plaintiff, who was gay and HIV-positive, to remain so on

appeal to protect against further discrimination and ostracism); *Doe v. Kolko*, 242 F.R.D. 193,

196, 198 (E.D.N.Y. 2006) (permitting use of pseudonym where plaintiff could face retaliation

from community members over accusations of sexual assault by Rabbi); *Doe v. Blake*, 809 F.

Supp. 1020 (D. Conn. 1992) (permitting use of pseudonym to protect HIV-positive plaintiff from

harassment and discrimination); *Doe v. Meachum*, 126 F.R.D. 452, 453 (D. Conn. 1989) (citing

*Doe v. Coughlin*, 697 F. Supp. 1234, 1237 (N.D.N.Y. 1988)) (same); *Doe v. United Services Life*

3

*Ins. Co.*, 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (allegedly gay plaintiff permitted use of pseudonym in part because of retaliation concerns in discrimination suit against insurance company); *see also Doe 1 v. Ciolli*, 611 F. Supp. 2d 216 (D. Conn. 2009) (suit by anonymous plaintiffs in response to online harassment and threats of sexual assault); *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006) ("Where litigants risk public scorn or even retaliation if their identities are made public, unpopular but valid complaints may not be pursued." (citing *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1982))); *cf. Doe v. Bridgeport Police Dept.*, 198 F.R.D. 325, 328 n.1 (D. Conn. 2001) (granting preliminary injunction to pseudonymous injection-drug users to prevent police from searching, or arresting participants in, needle exchange program).

### A.   Establishment Clause Plaintiffs Routinely Face Harassment and Other Forms of Retaliation, Including Physical Violence.

The plaintiffs here face risks similar to those in the above-cited cases. There is an alarming history of violence and threats of violence against Establishment Clause plaintiffs. For example, after Vashti McCollum brought a suit in 1945 objecting to the practice of allowing public-school students to attend religious classes held in public-school classrooms (*see Illinois ex rel. McCollum v. Bd. of Educ.*, 333 U.S. 203 (1948)), his house was vandalized, he received hundreds of pieces of hate mail, and his son was physically attacked (*see* ROBERT S. ALLEY, WITHOUT A PRAYER: RELIGIOUS EXPRESSION IN PUBLIC SCHOOLS 84-89 (1996)).

In 1981 Joann Bell and Lucille McCord filed suit to block religious meetings and the distribution of Gideon Bibles in their children's schools. *See Bell v. Little Axe Indep. Sch. Dist. No. 70*, 766 F.2d 1391 (10th Cir. 1985). The plaintiffs' children were consequently branded as "devil worshipers." ALLEY, *supra*, at 106. "An upside-down cross was hung on thirteen-year-old Robert McCord's locker." *Id.* And the Bells received threatening telephone calls. "More than once a caller said he . . . was going to break in the house, tie up the children, rape their

4

mother in front of them, and then 'bring her to Jesus.'"  *Id.* at 107-08.  The threats were far from empty:  The Bells' home was burned down.  *Id.*

In 1994 Lisa Herdahl brought an action challenging prayer practices in her children's schools.  *See Herdahl v. Pontotoc County Sch. Dist.*, 887 F. Supp. 902 (N.D. Miss. 1995).  As a result, her children were called "atheists and devil worshipers" by their classmates.  Stephanie Saul, *A Lonely Battle in Bible Belt: A mother fights to halt prayers at Miss. school*, NEWSDAY, Mar. 13, 1995, at A8.  Other children were threatened with beatings by their parents if they were caught talking to, or playing with, the Herdahl children.  ALLEY, *supra*, at 177.  There were reports that a boycott would be organized against the convenience store where Lisa Herdahl worked.  Saul, *supra*, at A08.  Herdahl gave up her job "because of threats against her children."  ALLEY, *supra*, at 182.  And she received death threats and threats that her home would be firebombed.  *Id.* at 186.

Similarly, the children of one of the plaintiffs in *School District v. Schempp*, 374 U.S. 203 (1963) (in which Bible reading in the public schools was held unconstitutional), were beaten on their way home from school, and their house was firebombed.  ALLEY, *supra*, at 98.  The son of the plaintiff in *Chandler v. Siegelman*, 230 F.3d 1313 (11th Cir. 2000) (a challenge to prayer at school-related events), was "harassed at school almost daily."  Jonathan Ringel, *Alabama Claims U.S. Court Order Denies Students' Right to Pray*, FULTON COUNTY DAILY REP., Dec. 4, 1998, at 1.  And even though she was not a plaintiff but merely a vocal opponent of the school-prayer policy challenged in *Santa Fe Independent School District v. Doe*, 530 U.S. 290 (2000), Debbie Mason received threatening phone calls, was followed home by persons trying to scare her, and saw her husband and children become unable to find work in the town where they lived.

Kenny Byrd, *Baptist Family Opposed to Football Prayer Feels Pressure*, BAPTIST STANDARD, June 12, 2000.

In the case of *Wynne v. Town of Great Falls*, 376 F.3d 292 (4th Cir. 2004), the plaintiff suffered extreme harassment at the hands of her neighbors after she sued to enjoin a town council from opening its meetings with sectarian prayers.  Individuals unhappy with the suit broke into the plaintiff's home and beheaded her pet parrot, leaving behind a note reading, "You're next!" *See* Christina Lee Knauss, *A Quiet Life No More*, THE STATE, Sept. 19, 2004, at D1.  In addition, several of the plaintiff's pet cats were killed and her pet dog was beaten. *Id.*

Tyler Deveny, the eighteen year-old plaintiff in *Deveney*[1] *v. Board of Education*, 231 F. Supp. 2d 483 (S.D. W. Va. 2002), endured a beating of his own after successfully challenging the invocation planned for his high-school graduation ceremony.  *See* Charles Shumaker, *Student beaten for prayer suit, he says*, CHARLESTON GAZETTE & DAILY MAIL, June 19, 2002, at 6D.  A group of eight teens evidently displeased with the outcome attacked Deveny in a public place, with one saying, "Oh, you hate God," before striking Deveny in the face. *Id.*

Unlike Deveny, the Dobrich family — plaintiffs in *Dobrich v. Walls*, 380 F. Supp. 2d 366 (D. Del. 2005) — did not suffer physical violence after challenging their public-school district's practices of permitting teachers to proselytize and distribute Bibles to non-Christian students and of rewarding students who attended school-sponsored Bible clubs.  *See* David Bario, *A Lesson in Tolerance*, AM. LAWYER, July 2008, at 122, 122.  But the harassment, anti-Semitic taunts, and veiled threats the family endured from fellow community members ultimately drove them to move to another county. *Id.*

---

[1] Mr. Deveny's last name was erroneously spelled as "Deveney" in the case caption.

6

Plaintiffs challenging religious displays on public property have also experienced retaliation in recent years. Anonka Jocham, the plaintiff in *Jocham v. Tuscola County*, 239 F. Supp. 2d 714 (E.D. Mich. 2003), received threatening phone calls and letters, and was the target of vandalism, after she challenged a private group's erection of a nativity scene on the lawn of her county courthouse. *See* Margaret Downey, *Discrimination Against Atheists: The Facts*, FREE INQUIRY, June 2004, at 41, 43. Margaret Downey wrote about Jocham's experiences after having endured similar harassment herself. *See* Joseph A. Slobodzian & Jonathan Gelb, *Commandments ruling spurs threats*, PHILA. INQUIRER, Mar. 8, 2002, at B1. As founder and president of the Freethought Society of Greater Philadelphia — the organizational plaintiff in *Freethought Society v. Chester County*, 334 F.3d 247 (3d Cir. 2003), a challenge to a Ten Commandments plaque displayed on a county courthouse's exterior wall — Downey received threatening emails and telephone calls, including one ending in the warning: "You're going to get it." *Id.*

And in a case from the Seventh Circuit, Judge Cudahy gave this description of events surrounding the substitution of a new, anonymous plaintiff for the original, named one:

> The record indicates that the original plaintiff in this case, Richard Rohrer, was, in effect, ridden out of town on a rail for daring to complain about the City's conduct. The present plaintiff has concealed her identity to avoid suffering the same treatment. However much some citizens of Ottawa may disagree with the position that the plaintiffs have taken, however much they may think the plaintiffs annoying and overlitigious, the conduct of some of them has been deplorable. This dispute has concerned the display of paintings from the life of Jesus of Nazareth, who counseled his followers: "But if any one strikes you on the right cheek, turn to him the other also; and if anyone would sue you and take your coat, let him have your cloak as well; and if any one forces you to go one mile, go with him two miles." One would think that those who support this display would be capable of more charity.

*Doe v. Small*, 964 F.2d 611, 626 (7th Cir. 1992) (Cudahy, J., concurring in the judgment) (citations omitted).

As Establishment Clause plaintiffs so frequently experience such retaliation, the federal courts often permit such plaintiffs to proceed anonymously. *See, e.g., Santa Fe*, 530 U.S. at 294 (noting that district court permitted students and parents challenging student-led prayer at public-school football games to litigate anonymously); *Doe v. Porter*, 370 F.3d 558, 561 (6th Cir. 2004) (upholding protective order allowing parents to proceed pseudonymously in challenge to public schools' practice of teaching Bible as religious truth); *Doe v. County of Montgomery*, 41 F.3d 1156, 1158, 1162 (7th Cir. 1994) (holding that anonymous plaintiffs had standing to challenge display of permanent metal sign reading, "THE WORLD NEEDS GOD," over main entrance to county courthouse); *Small*, 964 F.2d at 626 (Cudahy, J., concurring in the judgment) (noting that adult plaintiff proceeded anonymously in Establishment Clause challenge to display of religious paintings in public park); *Doe v. Vill. of Crestwood*, 917 F.2d 1476, 1477 (7th Cir. 1990) (adjudicating challenge by pseudonymous plaintiff to constitutionality of municipal festival at which Roman Catholic mass was held); *Stegall*, 653 F.2d at 186 (holding that plaintiffs challenging constitutionality of prayer and Bible-reading exercises in schools were entitled to proceed under pseudonyms); *Doe v. Gossage*, No. 1:06CV-070-M, 2006 U.S. Dist. LEXIS 34613, at *2 n.1 (W.D. Ky. May 24, 2006) (granting motion to proceed pseudonymously to plaintiff who was in "fear of reprisal against him and his family."); *Yacovelli v. Moeser*, No. 1:02CV596, 2004 WL 1144183, at *9 (M.D.N.C. May 20, 2004) (holding that "Plaintiffs' personal religious beliefs at stake combined with Defendants' weak showing of prejudice lean in favor of allowing pseudonyms" in Establishment Clause challenge to public university's requirement that students read Qu'ran); *Doe v. Barrow Cty.*, 219 F.R.D. 189, 193-94 (N.D. Ga. 2003) (holding that plaintiffs were entitled to proceed under pseudonyms in the face of threats and intimidation, including some directed at the court, in challenge against display of Ten

8

Commandments at county courthouse); *Doe v. Harlan County Sch. Dist.*, 96 F. Supp. 2d 667, 670-71 (E.D. Ky. 2000) (permitting plaintiffs challenging Ten Commandments display to proceed pseudonymously).

The plaintiffs here fear they will become a footnote to the disturbing history of retaliation described above. That history, and the common practice among federal courts of permitting Establishment Clause plaintiffs to proceed anonymously, weigh strongly in favor of granting Plaintiffs' motion.

**B.    Plaintiffs Each Fear Particular Forms of Retaliation Should Their Identities Be Disclosed — For Most, Based on Past Experience.**

The plaintiffs' particular fears, based mostly on their own experiences in the Enfield Schools and the surrounding community, add even greater weight to their interest in remaining anonymous. The plaintiffs represent two families containing religious minorities. Doe 1 is an agnostic (Ex. 124 ¶ 6) and Doe 2, Doe 1's parent, does not subscribe to the Christian faith (Ex. 125 ¶¶ 1, 6). Doe 3 is Jewish. Ex. 126 ¶ 6. And all the plaintiffs belong to a minority of Enfield residents and Enfield Schools students who object to using the Cathedral for graduation ceremonies. *See* Ex. 124 ¶¶ 8-9; Ex. 125 ¶¶ 8, 12; Ex. 126 ¶ 5; Ex. 127 ¶ 6; Ex. 128 ¶¶ 6-7.

Doe 1 will graduate from Enfield High School this June. Ex. 124 ¶ 7. Both Doe 1 and Doe 1's parent, Doe 2, share the same fears — that disclosure of their involvement in this suit would result in ostracism, harassment, or even threats from community members or, in the case of Doe 1, Doe 1's school peers. Ex. 124 ¶¶ 5, 8; Ex. 125 ¶ 5. Doe 1 is aware that many of Doe 1's fellow students have reacted negatively, and sometimes angrily, to objections to using the Cathedral for graduation. Ex. 124 ¶ 8. Indeed, Doe 1 is a member of the social networking website Facebook, where some Enfield Schools students have formed an online group to express their support for holding graduations at the Cathedral. Ex. 124 ¶ 9. Doe 1 is aware that at least

one member of this group has threatened to blackmail people who object to using the Cathedral if that member learns of their identity. *Id.*

Doe 2, keenly aware of recent reports of bullying and ostracism of unpopular students in schools, and the tragedies that have resulted, is particularly afraid that Doe 1 would be exposed to similar bullying should Doe 1's identity become known. Ex. 125 ¶ 7. This is especially disturbing to Doe 2 because Doe 1 tends to be emotionally sensitive. *Id.* Furthermore, Doe 2 has become more cautious when discussing Doe 2's views on the subject of this case, as well as on Doe 2's religious views more generally. Doe 2 has observed, both in the local media and at Board of Education meetings, reactions that Doe 2 describes as "militant" and "almost extreme" to objections to holding graduations at the Cathedral. Ex. 125 ¶ 8. Moreover, when Doe 2 has discussed Doe 2's views on church-state issues with other community members, they have reacted negatively, and for this reason Doe 2 now avoids this subject when speaking with acquaintances. Ex. 125 ¶ 14. This has made Doe 2 acutely aware of the fact that Doe 2 is a religious minority and an outsider in Doe 2's own community. *Id.* Ordinarily, Doe 2 would feel free to voice Doe 2's opinion to the Board of Education on the selection of the Cathedral as the graduation site, and Doe 2 has even considered running for election to the Board in the past. Ex. 125 ¶¶ 12, 13. However, after witnessing Board meetings where community members expressed outrage at the involvement of the American Civil Liberties Union with this case and demanded to know who the individual objectors were so that they could confront them and "find out what their problem is," Doe 2 does not express Doe 2's views for fear that such hostility would be directed at Doe 2 and Doe 2's family. Ex. 125 ¶¶ 9, 10, 11, 13.

Doe 3 is a student at Enfield High School and will graduate this June. Ex 126 ¶ 7. Doe 4 is a parent of Doe 3, and Doe 5 is a step-parent of Doe 3. Ex. 126 ¶ 1; Ex. 127 ¶ 1; Ex. 128 ¶ 1.

Doe 3 has witnessed a disturbing amount of anti-Semitism at Enfield High School, including name calling, bullying, and harassment, even toward students who are not actually Jewish. Ex. 126 ¶ 8. As a result, Doe 3 has not disclosed Doe 3's Jewish religious beliefs to anyone at school, and does not include them in information about Doe 3 on social networking website profiles. *Id*. Moreover, when Doe 3 has discussed, *with friends*, Doe 3's views on church-state issues, they have reacted negatively and mocked Doe 3. Ex. 126 ¶ 9. Doe 3 fears that if the larger student body or community learned of Doe 3's views, Doe 3 would be subjected to terrible harassment and bullying. *Id*. As a result, Doe 3 has chosen to discuss these views less often and is more careful when doing so. Ex. 126 ¶ 10.

Doe 5 has observed through local media the hostile reactions that some community members have had in response to objections to using the Cathedral. Ex. 128 ¶ 6. As a result, Doe 5 fears, as does Doe 4, that Doe 3 would be subjected to harassment, ostracism, or threats should their or Doe 3's involvement in this case become known. Ex. 127 ¶ 5; Ex. 128 ¶ 5. Moreover, both Doe 4 and Doe 5 are aware that many community members either support holding graduation at the Cathedral or have simply acquiesced in the decision so as not to risk disrupting this very important event in their children's lives. Ex. 127 ¶ 6; Ex. 128 ¶ 7. Doe 4 and Doe 5 fear that if their identities become known, they and Doe 3 will incur anger and hostility from community members and be blamed for disrupting graduation plans. Ex. 127 ¶ 6; Ex. 128 ¶¶ 6-7.

The response to controversy over graduations at the Cathedral by the larger Enfield community validates the plaintiffs' fears. Because many community members have learned of objections to using the Cathedral only through news accounts reporting on the involvement of the American Civil Liberties Union with the matter, hostile commentary in the local media has

11

mostly been directed at that organization instead of the plaintiffs, who have kept their views to themselves. *See, e.g.*, Ex. 129 at 2 (labeling the ACLU the "American Communist Lifestyle Union"); *id.* ("It's a shame Timothy McVeigh did [sic] hit the ACLU building instead."); *id.* at 3 ("ACLU - Anti-American Civil Liberties Union!  funded [sic] by terrorists whom [sic] want to destroy this country"); *id.* ("They are a bunch of anti american [sic] people.  They have no morals and absolutely hate people whom [sic] do"); *id.* at 6 ("ACLU ! YOU HAVE A LASER AIMING DOT ON YOUR HEAD ! GIT [sic] IT !!!"); Ex. 130 at 4 ("The ACLU is scum."); *id.* (The ACLU is comprised of "vipers," and "pathetic scumbags."); Ex. 131 ("The ACLU needs to be obliterated off the face of the earth!").

Should the plaintiffs' identities become known, there is little question they too would be subjected to this kind of vitriol.  Indeed some commentary in local media seeks to discover the identity of those who have complained.  *See, e.g.*, Ex. 129 at 3 ("This practice has been going for years with no complaints from everyone no [sic] some Yale or Harvard egghead wants to change that.  Who in the !@#$% are they?"); Ex. 131 ("seriously? who complains about this crap?"). Indeed the plaintiffs are in a far more vulnerable position than the organizations representing them because they are individuals, residents of Enfield, and students at the Enfield Schools.  As such, they present concrete, readily available targets for the kind of harassment, ostracism, and threats shown above, a factor that weighs heavily in favor of granting the plaintiffs' request for anonymity. *See Sealed Plaintiff*, 537 F.3d at 190.

II.     **Plaintiffs' Use of Pseudonyms Is Necessary to Protect Highly Private Information, Which Plaintiffs Themselves Have Sought to Protect, Concerning Particularly Vulnerable Parties.**

The Second Circuit has held that another factor weighing in favor of allowing plaintiffs to litigate anonymously is "whether the litigation involves matters that are highly sensitive and [of

a] personal nature." *Sealed Plaintiff*, 537 F.3d at 190; *see also Doe v. City of New York*, 15 F.3d at 264 (plaintiff proceeding anonymously to protect the "intensely personal matter" of his HIV status); *Doe v. Norwich Roman Catholic Diocesan Corp.*, 309 F. Supp. 2d 247, 249 (D. Conn. 2004) (adult plaintiff, subject to sexual assault as a minor, proceeding under fictitious name); *E.W. v. N.Y. Blood Ctr.*, 213 F.R.D. 108 (E.D.N.Y. 2003) (permitting use of pseudonym where private medical information concerning plaintiff was at issue); *Conn. Hosp. v. City of New London*, 129 F. Supp. 2d 123, 125 (D. Conn. 2001) (civil rights suit by anonymous plaintiffs, "who are recovering alcoholics and drug addicts"). An additional relevant factor is whether the plaintiffs have kept private information that could reveal their identities. *See Sealed Plaintiff*, 537 F.3d at 190 (citing *Del Rio*, 241 F.R.D. at 157); *cf. Doe v. Shakur*, 164 F.R.D. 359, 362 (S.D.N.Y. 1996) (denying plaintiff's motion for anonymity in sexual assault case against celebrity in part because "the press has known her name for some time.").

"Religion is perhaps the quintessentially private matter." *Stegall*, 653 F.2d at 186; *cf. Lee v. Weisman*, 505 U.S. 577, 589 (1992) ("[P]reservation and transmission of religious beliefs and worship is a responsibility and a choice committed to the private sphere."). And the plaintiffs do not discuss their religious views with colleagues, other community members, or fellow students. *See, e.g.*, Ex. 125 ¶ 14; Ex. 126 ¶ 8. What is more, the plaintiffs have, for the most part, kept to themselves their objections to using the Cathedral for graduation. Ex. 125 ¶ 11; Ex. 126 ¶ 10; *see also* Ex. 124 ¶ 8; Ex. 127 ¶ 6; Ex. 128 ¶ 6. The plaintiffs' identities are known only to counsel, their immediate family members and romantic partners, and, to some extent, each other. *See* Ex. 124 ¶ 3; Ex. 125 ¶ 3; Ex. 126 ¶ 3; Ex. 127 ¶ 3; Ex. 128 ¶ 3. Nor has any plaintiff made statements in public about their involvement with this case. Thus, the plaintiffs' identities remain confidential.

A further factor weighing in the plaintiffs' favor is the vulnerability of the student plaintiffs as religious minorities and youths. Religious minorities are well-recognized in case law as a vulnerable group. *See, e.g., City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) ("race, religion, [and] alienage" are "inherently suspect distinctions" for purposes of equal protection); *accord Burlington N. R.R. v. Ford*, 504 U.S. 648, 651 (1992); *Bell v. Duperrault*, 367 F.3d 703, 712 (7th Cir. 2004) (Posner, J., concurring); *Pinnacle Nursing Home v. Axelrod*, 928 F.2d 1306, 1317 (2d Cir. 1991). And Establishment Clause cases involving young students raise particular concerns because youths are especially susceptible to social pressure to conform. *See Lee*, 505 U.S. at 593-94. Consequently, they are less likely to openly challenge governmental action supported by majorities and are more likely to simply acquiesce, no matter how offensive they find such action. *See Del Rio*, 241 F.R.D. at 158 ("Where litigants risk public scorn . . . unpopular but valid complaints may not be pursued."). Though neither student plaintiff in this case is a minor, young, secondary-school-age students may nevertheless lack the emotional maturity necessary to withstand the kind of vitriolic community opposition and social ostracism that this case has already generated. *See supra*, pp. 10-13. Furthermore, while Does 2, 4 and 5 are adults, their identities should remain anonymous because revealing them would unquestionably reveal the identities of Does 1 and 3 as well. *See P.M. v. Evans-Brant Cent. Sch. Dist.*, No. 08-CV-168A, 2008 WL 4379490, at *3 (W.D.N.Y. Sept. 22, 2008) (noting, in the case of a minor student, that "protection afforded [by anonymity] to the minor would be eviscerated unless the parent was also permitted to proceed using initials").

**III.    Plaintiffs' Interests In Maintaining Their Anonymity Far Outweigh Any Potential for Prejudice to Defendant and the Public's Interest in Disclosure.**

On balance, the plaintiffs' privacy interests and the nature of this suit outweigh any risk of prejudice to the defendant and the public's interest in an open judicial process.  *See Sealed Plaintiff*, 537 F.3d at 189.

This case is a suit against a governmental defendant.  Not only is such a defendant less apt to suffer prejudice, as discussed below, but in such cases the "plaintiff's interest in proceeding anonymously is considered particularly strong."  *N.Y. Blood Ctr.*, 213 F.R.D. at 111.  This is due to the fact that, as here, plaintiffs suing governmental bodies often represent a "minority interest (and may be subject to stigmatization), and there is arguably a public interest in a vindication of [their] rights."  *Id.*; *see also Porter*, 370 F.3d at 560 (referring to this principle in Establishment Clause case); *Stegall*, 653 F.2d at 185-86 (applying this principle in Establishment Clause case).  Here, as discussed above, the plaintiff students are religious minorities who have challenged governmental action that appears to be supported by a majority of their community.  The plaintiffs fear that disclosure of their identities would result in retaliatory harassment, ostracism and even physical harm.  Disclosure would therefore likely chill the plaintiffs' exercise of their constitutional rights and deter other individuals from challenging popular, though unconstitutional, practices.

Furthermore, the public has an atypically weak interest in the identities of the plaintiffs.  The individual characteristics of the plaintiffs are not generally germane to litigation challenging governmental action.  *See N.Y. Blood Ctr.*, 213 F.R.D. at 111 (citing *Doe v. Smith*, 189 F.R.D. 239, 243 (E.D.N.Y. 1998), *vacated on other grounds,* 105 F. Supp. 2d 40 (E.D.N.Y. 1999)).  The question at issue — whether the Enfield Schools may, consistent with the Establishment Clause, hold graduation ceremonies at the Cathedral — is largely legal in nature.  *See Sealed Plaintiff*,

15

537 F.3d at 190 (one factor to weigh is "whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities"). The public's interest lies mainly in the constitutionality of the school district's actions and does not legitimately extend to the identities of those challenging it. Indeed, as discussed *supra* at 12-13, members of the public who wish to know the plaintiffs' identities appear to be motivated primarily by a desire to ostracize and harass the plaintiffs.

In analyzing the nature and extent of the prejudice a defendant may suffer as a result of litigating against anonymous plaintiffs, courts consider whether the defendant will suffer unfair damage to its reputation, whether there will be difficulties in discovery, and the proceeding's fundamental fairness. *N.Y. Blood Ctr.*, 213 F.R.D. at 111. When government action, rather than conduct of an individual defendant, is challenged, the defendant "is viewed as having a less significant interest in protecting its reputation from damaging allegations." *Id.*; *see also Jacobsen*, 6 F.3d at 239 n.3 (expressing doubt that district court would have found a governmental defendant subject to the same level of prejudice as a private defendant). Furthermore, the defendant will not suffer prejudice in discovery, for an appropriate protective order can address any difficulties that might arise from the plaintiffs' anonymity at that time. Finally, fundamental fairness is not violated here because the primary question is simply the constitutionality of the school district's actions; the plaintiffs are not accusing the defendant of any action constituting moral turpitude. *Cf. Shakur*, 164 F.R.D. at 362 (in sexual assault case against private defendant, plaintiff "made serious charges and has put her credibility in issue. Fairness requires that she be prepared to stand behind her charges publicly.").

## CONCLUSION

On balance, the factors enumerated by the Second Circuit weigh strongly in favor of granting the plaintiffs anonymity. The plaintiffs — bringing an unpopular Establishment Clause suit — face great risks of retaliatory harassment, ostracism, and physical harm. The plaintiffs keep their religious views, and their objections to the use of the Cathedral for graduation, private. As members of religious minorities and youths, the plaintiffs are members of vulnerable groups. On the other hand, the defendant, as a governmental entity, faces almost no risk that its reputation will be harmed in litigating against anonymous plaintiffs, and any discovery issues that may arise out of the plaintiffs' anonymity can be addressed through a protective order at a later stage of the litigation. For these reasons, the plaintiffs' motion for leave to proceed using pseudonyms should be granted.

Respectfully submitted,

/s/ Alex J. Luchenitser*

Ayesha N. Khan*
 Legal Director
Alex J. Luchenitser*
 Senior Litigation Counsel
Devin Cain*
 Steven Gey Fellow
Americans United for
 Separation of Church
 and State
518 C St. NE
Washington, DC 20002
phone: 202-466-3234
fax: 202-466-2587
khan@au.org
luchenitser@au.org
cain@au.org

*David McGuire*

/s/ David J. McGuire
/s/ Sandra J. Staub*

Sandra J. Staub*
 Legal Director
David J. McGuire
 Staff Attorney (ct27523)
ACLU of Connecticut
2074 Park St.
Suite L
Hartford, CT 06106
phone: 860-523-9146
fax: 860-586-8900
sstaub@acluct.org
dmcguire@acluct.org

/s/ Daniel Mach*

Daniel Mach*
 Director
ACLU Program on
 Freedom of Religion
 and Belief
915 15th St., NW
Washington, DC 20005
phone: 202-675-2330
fax: 202-546-0738
dmach@aclu.org

* Not admitted to practice before this court. *Pro hac vice* motions submitted herewith.

May 4, 2010

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 10, 2010, a copy of foregoing [Corrected] Memorandum of Points & Authorities in Support of Plaintiffs' Motion for Leave to Proceed Using Pseudonyms was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Respectfully submitted,

/s/ Devin M. Cain
Devin M. Cain (phv03991)
Americans United for Separation of Church
  and State
518 C St., NE
Washington, DC 20002
phone: (202) 466-3234
fax: (202) 466-2587
*cain@au.org*